[No. 3212–2. Division Two. February 22, 1978.]

HERBERT L. GASKILL, ET AL, *Respondents,* v. THE CITY OF MERCER ISLAND, *Respondent,* ALBERT WILLIAMS, ET AL, *Appellants.*

*Stevan D. Phillips* and *Hillis, Phillips, Cairncross, Clark & Martin,* for appellants.

*Derrill T. Bastian, Arnold B. Robbins, Breskin, Rosenblume & Robbins,* and *Alan F. Austin,* for respondents.

PETRIE, J.—By this appeal, Albert and Ethel Williams, husband and wife, challenge the trial court's attempted enforcement of a stipulation made in open court purportedly to effect a compromise and settlement of an action filed by Herbert L. and Margaret Gaskill, husband and wife, against the City of Mercer Island and Mr. and Mrs. Williams. We hold that the stipulation does not satisfy the requirements of CR 2A and that there was no meeting of the minds of all the parties to all the essential elements necessary to effect an agreement to terminate the action. Accordingly, we reverse the orders which attempted to enforce the alleged agreement.

For purposes of resolving the issues on appeal, a simplified description of the parties' property should suffice.

Tracts 2 and 3 of Lakeholm Addition to the City of Mercer Island are each elongated, rectangular lots 80 feet wide, fronting on East Mercer Way, extending easterly in excess of 400 feet, and sloping downward to the shores of Lake Washington. Tract 2 lies north of tract 3.

Mr. and Mrs. Gaskill own an irregular–shaped portion of tract 3. One parcel is lakefront property for a width of 40 feet and runs lengthwise along the southern one–half of the tract for approximately 90 feet; the other, adjoining the first, is a rectangular parcel 80 feet wide and 175 feet long. The Gaskill property does not extend all the way to East Mercer Way. However, an existing 12–foot easement along the southern boundary of tract 3, extending from the road to Gaskill's westerly boundary, services the Gaskill property as a driveway. Mr. and Mrs. Williams own the remaining portions of tract 3 and all of tract 2.

In 1974, the City of Mercer Island approved a short plat of the Williams' property, dividing their land into four separate parcels. Three of the newly platted lots, designated lots 1, 2, and 3, are 75 feet wide (the north 75 feet of Lakeholm tract 2). Lot 1 fronts on East Mercer Way, lot 3 fronts on Lake Washington, and lot 2 is the mid–portion of the north 75 feet of Lakeholm tract 2.

Newly platted lot 4 consists of Williams' portions of Lakeholm tract 3 (80 feet wide at street–front, subject to the 12–foot easement for Gaskill's driveway) and also includes an elongated 5–foot strip (the southern 5 feet of Lakeholm tract 2) which joins the Williams' lakefront portion of tract 3 to the street–front portion of their tract 3 property. Thus, the street–front portion of lot 4 is only 73 feet wide (see sketch on page 310).

Before approving the short plat, the City granted Mr. and Mrs. Williams a 2–foot variance from the normal minimum lot width requirement of 75 feet, for newly platted lot 4. Previously, the City had adopted an ordinance redefining the word "lot" which, in effect, authorized the lakefront and the street–front portions of lot 4, as joined by the elongated 5–foot strip, to be classified as one contiguous lot.

A significant part of the short plat included extension of the existing driveway northerly along the western boundary of the Gaskill property, in order to service lots 2 and 3 of the new plat. This was a source of major concern for the Gaskills, and they sought judicial review of several decisions which the City of Mercer Island had taken.

WILLIAMS   SHORT   PLAT

By writ of certiorari to the superior court, the Gaskills challenged (1) the City's approval of the short plat, (2) its grant of the 2–foot variance, and (3) its enactment of the ordinance which amended the definition of a "lot." After the City filed its return, the matter came on for hearing in July and again in September 1975. After protracted argument by counsel and several admonishments by the court to seek an amicable resolution of the dispute, counsel for all parties, together with Mrs. Williams, adjourned to the court's chambers on September 15, 1975, to discuss the possibility of resolving the issues. When all returned to open court, they were joined by Mrs. Gaskill, and the following record was made:

MR. BASTIAN: [Counsel for Gaskills] Your Honor, could we get into the record that we are continuing this subject to call and everybody has agreed that there is a sale price to the Gaskills for Lot 4 or the remaining portion of old Lot 3, Lakeholm Addition, for $62,500.00; each party to pay the customary closing costs.

May we have that kind of understanding?

THE COURT: As I understand, the matter is continued subject to call, that they will complete negotiations for the sale of Lot 4 to the Gaskills for the sale price of $62,500.00, details of the contract to be negotiated and the usual form—now, I don't know how you want to negotiate the sale. That each party will pay the customary costs which, in my opinion, the sales tax to be paid by the seller and the title insurance paid by the seller and the filing fees to be paid by the buyer.

MR. BASTIAN: The which fees?

THE COURT: The filing fees to file the deeds and the documents. I believe that is usual, isn't it, Mr. Austin?

MR. AUSTIN: [Counsel for the City of Mercer Island] Yes.

THE COURT: Those are the terms.

MRS. GASKILL: We think the record should reflect in the proposed—I am sorry to interrupt, is that all right?

THE COURT: That's fine.

MRS. GASKILL: That on the proposed plat that there is another five feet to be added on account of a variance situation. On the plat there has been another five feet added.

MR. BASTIAN: Your Honor, what she is saying, and I think actually this is for the benefit of Mrs. Williams—

MRS. GASKILL: This is for the benefit of Mrs. Williams. We don't want the five feet.

MR. BASTIAN: When you take Lot 4 that goes five feet over in here (indicating), which she has added onto that lot from the old plat. It was Lot 2 and Lot 3, Lakeholm Addition. The boundary of that is down here. In order to get this variance they moved that over five feet (indicating).

THE COURT: You are willing that she take back that five feet?

MRS. GASKILL: That is what I am saying.

MR. BASTIAN: The understanding should be that the Gaskills are purchasing what was old Lot 3.

THE COURT: That's right, Lakeholm Addition. That is what my understanding is. That does give you a little advantage, and that is the way it should be.

That is the extent of the stipulation made in open court. A dispute arose within days as to the full meaning of the stipulation.

We are required to evaluate the sufficiency of stipulations by the terms of CR 2A which provides as follows:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court before a court reporter, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

*See also* RCW 2.44.010.

It is apparent that the adjournment to chambers was for the purpose of attempting to totally dispose of the tripartite action then pending before the court. The result was a stipulation on the record that Mrs. Williams agreed to sell a parcel of land to Gaskills for $62,500. Although the trial court initially referred to this parcel as lot 4 of the short

plat, Mrs. Gaskill interjected that they did not want the 5 feet that had been added to Lakeholm tract 3 in order to provide sufficient width for lot 4 of the new plat. Ultimately, with assistance from Mrs. Gaskill and her trial counsel, the court expressed the understanding that Gaskills were purchasing only the property within the confines of the remaining portions of old lot (tract) 3 of Lakeholm Addition.

Although Mrs. Williams and her counsel were both in court, neither was asked to affirmatively assent to this sale. Nevertheless, we view their silent acquiescence as an implied consent to the sale of the property as a condition necessary to an amicable termination of the action. *See Lasell v. Beck,* 34 Wn.2d 211, 208 P.2d 139 (1949).

Our concern, however, lies not with the sufficiency of the record to support the sale of a parcel of land; the sale was obviously designed as a part of an overall agreement to dispose of the action then pending before the court. Our concern lies with determining the nature of the overall agreement. Ordinarily, when two people question ownership of property in court, sale of the property to one of the parties necessarily implies a termination of the action. The case at bench, however, is not that type of a dispute; rights of the several parties involve more than a dispute over ownership of property. For example, the record of the stipulation is entirely silent as to what disposition is to be made of the Williams short plat.

When the parties presented orders to the court to effectuate their understanding of the stipulation, counsel for the City of Mercer Island contended the plat should be vacated. The trial court apparently agreed and signed an order vacating the plat. Williams objected, and upon reconsideration the trial court found another solution. Instead of vacating the entire plat, the trial court simply deleted from the plat the land which was ordered sold to the Gaskills, and held the remainder of the plat "in all other respects valid, binding and continued in full force and effect."

The net effect of that order was to destroy the newly platted extension of the proposed driveway which was specifically designed to service lots 2 and 3 of the approved plat, leave platted lots 1, 2, and 3 intact, and create another, court–engendered lot 5 feet wide and 400 feet long. In other words, the court replatted the property, ostensibly by stipulation of the parties.

Under separately filed appeals, Mr. and Mrs. Williams have challenged both orders in this court.

Additionally, the trial court entered orders (1) confirming the stipulation and directing the Williams to convey tract 3, Lakeholm Addition, to the Gaskills or, alternatively, directing a commissioner to so convey the property, the "trial having been terminated by stipulation," and (2) denying the Williams' motion to set aside the stipulation and to release them from the same. Both of these orders are also before us on the Williams' appeals.

We turn first to the orders purporting to alter the short plat.

There is, of course, nothing in the record made in open court on September 15, 1975, which would support a vacation of the entire plat by stipulation of the parties. Similarly, there is no indication in the open court record which necessarily implies that the dispute should be settled by vacation of that portion of the plat to be sold *and* retaining as a truncated plat, whatever remained. When the several parties argued their respective contentions on a motion for reconsideration, the trial judge indicated that he was aware of the problem and announced in open court, in the presence of all counsel, on January 14, 1976:

> I will tell you what we will do. We will vacate the plat only as to access, and I will retain jurisdiction, and *if the City of Mercer Island doesn't give you access, I will give it to you.*

(Italics ours.)

Counsel for Williams and for the City agreed to try to settle the access issue, but the record is absolutely silent that any concrete results were obtained. After the appeals

were filed, of course, the trial court lost jurisdiction to consider the issue further.

Mr. and Mrs. Gaskill contend the trial court's ultimate action precisely embodies the stipulation; Mr. and Mrs. Williams contend they never intended to abandon their newly platted or acceptable alternative access to the off-street lots nor to accept a truncated plat; the City of Mercer Island has not tendered us a brief as to its understanding of the stipulation.

In support of their position the Gaskills direct our attention to an unusual attempted addition to the verbatim report of the proceedings held on September 15, 1975. A signed statement of the trial judge's understanding of the events which occurred *in his chambers* immediately before the stipulation was made in open court has been added to the record. The court's recollection of events in chambers included an exploration of the possibility of

the sale of Lot 4 of the proposed short plat to Mr. and Mrs. Gaskill by the Williams, and that, as of the last negotiations, the principal item blocking completion of the sale was a disagreement as to the price which should be paid for the property.

The court's version of what transpired continued:

Mrs. Ethel Williams stated to the Court that she had reduced her asking price from $70,000.00 to $65,000.00, and Mr. Bastian stated to the Court that Mr. and Mrs. Gaskill had increased their offer from $55,000.00 to $60,000.00.

Thereupon, Mrs. Ethel Williams stated to Mr. Bastian, the Court and the other persons present, that "in the interests of settling this case, I will split the difference. If Mr. and Mrs. Gaskill will come up to $62,500.00, I will sell for that price."

Mr. Bastian then excused himself from chambers, and upon return to the Court chambers advised the Court and Mrs. Williams and her counsel that Mr. and Mrs. Gaskill would accept the compromise and purchase the property for $62,500.00, and that the case would be settled on that basis; that upon confirmation of the sale, the Williams could establish ingress–egress easements along

the southerly edge of their then remaining property to service the lots thereon; and that the Gaskills would not object to the granting to the Williams by the City of Mercer Island any necessary variances to establish valid lots on the Williams then remaining property.

■ If the purpose of adding the trial court's version of the events which occurred in chambers is to supplement the record of proceedings in open court, and thus eliminate the deficiencies apparent in that record, the attempted annexation is of no value. In *Eddleman v. McGhan,* 45 Wn.2d 430, 275 P.2d 729 (1954) the court expressly rejected an attempt to circumvent the clear mandate of the rule, now codified as CR 2A, and the statute, RCW 2.44.010. The court reasoned:

> The purpose of the cited rule and statute is to avoid such disputes and to give certainty and finality to settlements and compromises, if they are made. While the compromise of litigation is to be encouraged, negotiations toward a compromise are not binding upon the negotiators. Where, as here, it is disputed that the negotiations culminated in an agreement, noncompliance with the rule and statute leaves the court with no alternative. It must disregard the conflicting evidence as they direct.

*Eddleman v. McGhan, supra* at 432.

Furthermore, the trial court's expressly approved version of events in chambers does not truly clarify the stipulation. It merely establishes the price at which the parties agreed to buy and sell a parcel of land and indicates what the Gaskills' version of that purchase entails. It necessarily implies the Gaskills' willingness to terminate the action by abandoning pursuit of the writ which they sought in court, but neither it nor the open court record establishes the terms of a complete agreement of compromise and settlement of the action.

Nothing could express more vividly the total lack of a meeting of the minds as to the essential elements of the agreement to terminate the action than the promise of the trial court to Mr. and Mrs. Williams that it would retain

jurisdiction in order to insure that they received appropriate treatment from the City of Mercer Island. On the one hand, the trial court attempted to enforce an agreement which was premised upon the "trial having been terminated by stipulation" of only two of the three parties before it, and on the other hand, the court retained jurisdiction of the action to insure justice would be dispensed to one of the stipulating parties if an adequate agreement could not be reached with the third party before the court.

The orders appealed from are reversed, and the cause is remanded with direction to proceed with resolution of the merits of the writ pending before the Superior Court for King County.

PEARSON, C.J., and SOULE, J., concur.

Petition for rehearing denied March 15, 1978.

Review denied by Supreme Court August 25, 1978.