[No. 14323-2-II. Division Two. August 19, 1993.]

*In the Matter of the Marriage of* RALPH H. FERREE, JR., *Appellant, and* BARBARA BETHUNE FERREE, *Respondent.*

*Herbert Gelman* and *Gelman & Associates,* for appellant.

*Richard Shepard,* for respondent.

MORGAN, J. — Ralph Ferree appeals a decree of legal separation. We affirm.

On November 10, 1988, Mr. Ferree petitioned for dissolution of his 8-year marriage to Ms. Ferree. He was represented by attorney John Miller. Ms. Ferree was represented by attorney Lois Spiegel. There were no children and no real property, so the only issues were personal property, maintenance, debts, and attorney fees. Trial was set for March 7, 1990.

On February 28, 1990, a settlement conference was held before a court commissioner. Both parties and both attorneys were present. The court commissioner recommended a 5-year structured settlement.

"After the conference with the Commissioner and after intense negotiations, an agreement was finally achieved by the parties."[1] Among other things, the agreement was for "initial maintenance payments of $900.00 per month, beginning in the month of March, 1990."[2] The agreement was not reduced to writing or put on the record of the court. Within a short time, the trial date was stricken, and Miller drafted proposed findings and a proposed decree of legal separation on his office stationery.

---

[1] Declaration of Miller; Clerk's Papers (CP), at 16-17. The declaration of Ms. Ferree also states, "Following the session with the Commissioner's [sic], Ralph and I and our attorneys hammered out an agreed structured settlement . . .."

[2] Declaration of Ms. Ferree; CP, at 20.

On July 20, 1990, the attorney-client relationship between Miller and Mr. Ferree was severed. Miller's proposed findings and decree had not yet been presented to the court. During the next 2 or 3 weeks, Mr. Ferree obtained new counsel.

Ms. Ferree then made a motion "for an order adopting the settlement provisions agreed [upon] by the parties on February 28, 1990, and entering the Findings, Conclusions and Decree which memorialized that settlement."[3] She supported the motion with sworn declarations from herself, Spiegel, and Miller.[4] The declarations stated that the parties had reached agreement after the settlement conference on February 28, and that the agreement was memorialized in Miller's proposed findings and decree.

Although the record is not entirely clear, it appears that Ms. Ferree's motion first came before the court on the motion docket of August 10, 1990.[5] A superior court judge granted a 2-week continuance and indicated Mr. Ferree "would have leave to file pleadings."

During the next 2 weeks, Mr. Ferree's only submission was a 7-page memorandum of authorities signed by his new counsel. He did not file an affidavit or declaration contravening those of Ms. Ferree, Spiegel, or Miller.

The motion again came before the court on August 24, 1990. Mr. Ferree's new counsel vigorously argued that no agreement had been formed on February 28. The trial judge granted the motion and entered the findings and decree drafted by Miller. The findings and decree were signed by

---

[3]CP, at 23.

[4]Miller's declaration was dated August 2, 1990. It was not the declaration of an attorney in the cause, because Miller had already withdrawn. However, it was the declaration of a witness to the events of February 28, and it is entitled to consideration as such.

[5]According to the clerk's filing stamp, the motion was filed on August 15, 1990. In court on August 24, 1990, however, both counsel said the motion had been on the motion docket 2 weeks earlier, at which time it was continued to August 24. Report of Proceedings (RP), at 2, 12-13.

Ms. Ferree and her counsel, but not by Miller, Mr. Ferree, or Mr. Ferree's new counsel.

The major issue on appeal is whether Ms. Ferree was entitled to enforce the settlement agreement of February 28. Another issue is whether the record is sufficient to support a decree of legal separation.

I

Mr. Ferree argues that CR 2A, RCW 2.44.010(1), and Pierce County Local Special Proceedings Rule 94.04(e)(5), all bar enforcement of any agreement that might have been made on February 28. We begin with CR 2A.

A

CR 2A provides:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

By its terms, CR 2A applies only to agreements that satisfy two elements. First, the agreement, hereafter called a settlement agreement,[6] must be made by parties or attorneys "in respect to the proceedings in a cause". Second, "the purport" of the agreement must be disputed. *Graves v. P.J. Taggares Co.*, 25 Wn. App. 118, 122, 605 P.2d 348, *aff'd*, 94 Wn.2d 298, 616 P.2d 1223 (1980); *see Eddleman v. McGhan*, 45 Wn.2d 430, 432, 275 P.2d 729 (1954); *Bryant v. Palmer Coking Coal Co.*, 67 Wn. App. 176, 179, 834 P.2d 662 (1992), *review denied*, 120 Wn.2d 1027 (1993).

When these elements are met, CR 2A supplements but does not supplant the common law of contracts. *Morris v. Maks*, 69 Wn. App. 865, 868, 850 P.2d 1357 (1993); *Stottlemyre v. Reed*, 35 Wn. App. 169, 171, 665 P.2d 1383, *review*

---

[6]We use the term "settlement agreement" for convenience, and because that is the type of agreement involved here. In using that term, we do not mean to include settlement agreements not related to the proceedings in a cause, nor do we mean to exclude stipulations or other agreements that narrow but do not completely settle a cause.

*denied,* 100 Wn.2d 1015 (1983); *see Gaskill v. Mercer Island,* 19 Wn. App. 307, 316, 576 P.2d 1318, *review denied,* 90 Wn.2d 1015 (1978). It precludes enforcement of a disputed settlement agreement not made in writing or put on the record, whether or not common law requirements are met. *Eddleman v. McGhan,* 45 Wn.2d at 432 (predecessor rule); *Bryant v. Palmer Coking Coal Co.,* 67 Wn. App. at 176; *Gaskill v. Mercer Island,* 19 Wn. App. at 316. However, it does not affect an agreement made in writing, *Morris v. Maks, supra,* or put on the record. *Snyder v. Tompkins,* 20 Wn. App. 167, 579 P.2d 994, *review denied,* 91 Wn.2d 1001 (1978); *Baird v. Baird,* 6 Wn. App. 587, 494 P.2d 1387 (1972).

The issue in this case is whether the alleged agreement of February 28 is disputed within the meaning of the rule. Mr. Ferree does not argue that it did not meet the common law rules for contracts, or that it was not made by parties acting "in respect to the proceedings in a cause." Ms. Ferree does not argue that it was reduced to writing or put on the record of the court.

At least two criteria govern whether an agreement is disputed within the meaning of CR 2A. First, there must be a dispute over the existence or material terms of the agreement, as opposed to a dispute over its immaterial terms. On its face, CR 2A says that the "purport" of the agreement must be disputed. According to Black's Law Dictionary, the "purport" of something is its meaning, import, substantial meaning, substance, legal effect. Black's Law Dictionary 1236 (6th ed. 1990). According to *Webster's Third New International Dictionary,* the "purport" of something is the meaning it conveys, professes or implies, or its substance or gist. *Webster's Third New International Dictionary* 1847 (1969). The substance, gist, or legal effect of an agreement is found in its existence and material terms, and it follows that the "purport" of an agreement is disputed only when its existence or material terms are disputed.

Second, the dispute must be a genuine one. The purpose of CR 2A is not to impede without reason the enforcement of

agreements intended to settle or narrow a cause of action; indeed, the compromise of litigation is to be encouraged. *Eddleman v. McGhan,* 45 Wn.2d at 432; *Bryant v. Palmer Coking Coal Co.,* 67 Wn. App. at 179; *Snyder v. Tompkins,* 20 Wn. App. at 173. Rather, the purpose of CR 2A is to insure that negotiations undertaken to avert or simplify trial do not propagate additional disputes that then must be tried along with the original one. This purpose is served by barring enforcement of an alleged settlement agreement that is genuinely disputed, for such a dispute adds to the issues that must be tried. It is not served by barring enforcement of an alleged settlement agreement that is not genuinely disputed, for a nongenuine dispute can be, and should be, summarily resolved without trial.

The burden is on the moving party to prove there is no genuine dispute regarding the existence and material terms of a settlement agreement. *See Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985) (in summary judgment proceedings, burden is on moving party to show no genuine dispute). This is but a specific application of the general rule that one who would recover on a contract must prove its existence and terms. *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.,* 96 Wn.2d 939, 944, 640 P.2d 1051 (1982) (proponent of contract must prove its existence); *Western Wash. Laborers-Employers Health & Sec. Trust Fund v. Merlino,* 29 Wn. App. 251, 255, 627 P.2d 1346 (1981) (proponent of contract must prove its terms); *Peoples Mortgage Co. v. Vista View Builders,* 6 Wn. App. 744, 747, 496 P.2d 354 (1972) (proponent of contract has burden of proving promise, consideration, breach and damages).

Occasionally, the moving party may be relieved of his or her burden by discussions that occur in open court. An example is provided by the facts in *Stottlemyre.*[7] There, the trial

---

[7] The holding of *Stottlemyre* is not on point, for it involved RCW 2.44.010(1) rather than CR 2A.

court convened a hearing on the defendant's motion to enforce a settlement agreement. At the hearing, the trial court questioned plaintiff's counsel, who squarely acknowledged that the existence and terms of the settlement agreement were not genuinely disputed.[8] Not surprisingly, the trial court held that enforcement of the agreement was not barred, and the appellate court held likewise.

Often, however, the moving party will not be relieved of his or her burden by discussions in open court. An example is provided by the facts in this case. Mr. Ferree changed counsel after the events of February 28. When Ms. Ferree moved to enforce what she claimed was a settlement agreement, Mr. Ferree's new counsel, as advocate, orally asserted in open court that no agreement had been formed. These assertions were without any apparent basis, for new counsel had no personal knowledge regarding the events of February 28 and the record contained no affidavit or other testimony from Mr. Ferree. Thus, with counsel's assertions but no more, there was no way to divine whether the existence and material terms of the alleged settlement agreement were genuinely disputed.

When the moving party must meet his or her burden, the preferred way of doing so is by affidavit or declaration.[9] Thus, CR 43(e)(1) provides:

---

[8]The questioning was as follows:

"THE COURT: Were you the one who negotiated this matter?

"MR. BEELER: Yes, Your Honor.

"THE COURT: And were there negotiations and was there a conversation between you and Mr. Forgette in which you accepted $8,800 subject to the approval of your client?

"MR. BEELER: Yes.

"THE COURT: And did you later contact Mr. Forgette and indicate to him that you had that approval?

"MR. BEELER: Yes.

"THE COURT: Did you have that approval?

"MR. BEELER: Orally, yes." 35 Wn. App. at 172-73.

[9]An alternative way of doing so is producing live testimony, if the trial court so allows. CR 43(e)(1); *Eddleman,* 45 Wn.2d at 432 (live testimony); *Bryant,* 67 Wn. App. at 177 (live testimony). However, this would seem needlessly wasteful

> When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.

*See also* RCW 9A.72.085 (declaration under penalty of perjury has same effect as affidavit).

When a moving party relies on affidavits or declarations to show that a settlement agreement is not genuinely disputed, the governing principles should be the same as those that apply in summary judgment proceedings. In summary judgment proceedings, the issue is whether a genuine dispute of fact exists. CR 56(c), (e). When a motion is made to enforce a settlement ' agreement on grounds that its existence and material terms are not genuinely disputed, the issue is also whether a genuine dispute of fact exists. Because the issue is the same, the governing rules should be the same.

This reasoning is confirmed by the fact that summary judgment procedures are routinely applied to most agreements when the issue is whether a genuine dispute of fact exists. The existence and material terms of an agreement are a question of fact, *Barnett v. Lincoln*, 162 Wash. 613, 617, 299 P. 392 (1931); *Garbell v. Tall's Travel Shop, Inc.*, 17 Wn. App. 352, 354, 563 P.2d 211 (1977) (citing *Howarth v. First Nat'l Bank*, 540 P.2d 486, 490 (Alaska 1975)), but the question is not genuinely disputed when reasonable minds could reach only one conclusion. *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.*, 120 Wn.2d 573, 582, 844 P.2d 428 (1993); *see Hartley*, 103 Wn.2d at 775.

Summary judgment procedures involve several steps which, in combination, ferret out the presence or absence of a genuine dispute of fact. The moving party must initially produce affidavits, declarations or other cognizable materials

---

of judicial resources. Although live testimony is needed to resolve a genuine dispute of fact, it is not needed to determine whether a genuine dispute of fact exists in the first instance. Thus, when a motion is made to enforce a settlement agreement in the face of a CR 2A objection, and the issue is whether a genuine dispute exists, affidavits are fully as useful as live testimony. *See* CR 56.

that show the *absence* of a genuine dispute of fact. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989); *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 302, 616 P.2d 1223 (1980); *Jacobsen v. State,* 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). If and only if the moving party does this, the nonmoving party must produce affidavits, declarations or other cognizable materials that show, internally or by comparison, the *presence* of a genuine dispute of fact. *Young,* 112 Wn.2d at 225; *Graves,* 94 Wn.2d at 302. The nonmoving party cannot rely on the oral assertions of counsel that are not made under penalty of perjury, *Wilkerson v. Wegner,* 58 Wn. App. 404, 408 n.3, 793 P.2d 983 (1990), or that have no basis in personal knowledge or the record. *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 880, 431 P.2d 216 (1967) (attorney's verification of pleading insufficient when based on hearsay, or on information and belief); *see W.G. Platts, Inc. v. Platts,* 73 Wn.2d 434, 443, 438 P.2d 867, 31 A.L.R.3d 1413 (1968) (insufficient to make "mere assertion that an issue exists without any showing of evidence") (citing *Reed v. Streib,* 65 Wn.2d 700, 706, 399 P.2d 338 (1965)). The court must read the parties' submissions in the light most favorable to the nonmoving party, *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d at 226; *Jacobsen,* 89 Wn.2d at 108-09, and determine whether reasonable minds could reach but one conclusion. If so, summary judgment is appropriate. *Hartley,* 103 Wn.2d at 775. Otherwise, it is not.

In this case, we hold that Ms. Ferree had the burden of proving that the existence and material terms of the February 28 agreement were not genuinely disputed. She could bear that burden by producing appropriate affidavits or declarations. Once she did that, Mr. Ferree was obligated to show that he genuinely disputed the existence of the agreement, or one or more of its material terms. Like Ms. Ferree, he could do that by producing affidavits or declarations. He could not, however, do it by the unsworn assertions of his new counsel,

who had no personal knowledge of what had occurred on February 28. The trial court's duty was to read the affidavits and declarations in the light most favorable to Mr. Ferree, and then to decide whether the alleged settlement agreement was disputed. The issue for the court was not whether the agreement was disputed in the sense that Mr. Ferree did not wish to abide by it, but rather whether the agreement was disputed in the sense that Mr. Ferree had controverted its existence or material terms in such a way as to raise a genuine issue of fact. If Ms. Ferree had failed in her burden or Mr. Ferree had carried his, the court was required to disregard the agreement and set trial on the original case. If Ms. Ferree had carried her burden and Mr. Ferree had failed in his, the court was empowered to enforce their settlement agreement.

Ms. Ferree carried her burden by producing affidavits from three of the four persons present at the events of February 28. Each of those affidavits stated that an agreement had been reached, and that its material terms were incorporated in Miller's proposed findings and decree.

Mr. Ferree failed to carry his burden. He produced no testimony by affidavit, declaration or any other means, and the assertions of his new counsel lacked any foundation in personal knowledge or the record.

We conclude that reasonable minds could reach but one conclusion regarding the events of February 28. A settlement agreement was reached, and its terms were as set forth in Miller's proposed findings and decree. Although Mr. Ferree would prefer not to abide by it, its "purport" is not disputed within the meaning of CR 2A, and the trial court did not err by enforcing it over objection based on that rule.

### B

■ RCW 2.44.010 provides:

An attorney . . . has authority:
(1) To bind his client in any of the proceedings in an action or special proceeding by his agreement duly made, or entered

upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him, or signed by the party against whom the same is alleged, or his attorney;

This statute originated as a small part of the Code of 1881, CCL, a comprehensive enactment relating to the qualifications, licensing, powers and disbarment of attorneys. By both its terms and its context, it applies to agreements made by attorneys, but not to agreements made by the clients themselves.

Here, the declarations of Ms. Ferree, Spiegel and Miller establish without controversion that the agreement of February 28 was made by the parties themselves, albeit in the presence of their attorneys. Thus, RCW 2.44.010(1) does not apply.[10]

## C

Pierce County Local Special Proceedings Rule 94.04(e)(5) applies to settlement agreements reached under the supervision of a Pierce County judge or court commissioner. In this case, the declarations of Ms. Ferree, Spiegel and Miller establish without controversion that the settlement agreement of February 28 was reached after the settlement conference with the court commissioner had concluded, and after the parties had conducted further "intense" negotiations. Thus, it was not reached during a conference being supervised by a judge or court commissioner, and the local rule does not apply.

## II

Mr. Ferree advances two reasons why the record is insufficient to support a decree of legal separation. First, he argues that the original pleadings were for dissolution, not legal

---

[10]In light of this result, we need not consider whether CR 2A supersedes or otherwise affects RCW 2.44.010(1). *See* RCW 2.04.200.

separation. Second, he argues there was no "formal proof" before the decree was entered.

## A

The first argument fails. On February 28, the parties agreed to a decree of legal separation. We have held that that agreement was enforceable by the trial court. Coupled with the original petition, that agreement provided an adequate basis for a decree of legal separation, and the trial court did not err when it entered that type of decree.

## B

 The second argument also fails. Mr. Ferree cites "local practice".[11] However, local practice is not shown in the record, and we decline to guess at what it is. Mr. Ferree also refers to a "Local Rule of Pierce County Superior Courts". However, he does not cite a particular local rule, and we have not been able to find one. In light of the rule that an appellate court need not consider argument unsupported by authority, *Seattle-First Nat'l Bank v. Washington Ins. Guar. Ass'n*, 116 Wn.2d 398, 410, 804 P.2d 1263 (1991), we decline to consider this argument.[12]

The judgment is affirmed.

SEINFELD, A.C.J., and PETRICH, J. Pro Tem., concur.

---

[11] Brief of Appellant, at 8.

[12] In any event, the argument is unpersuasive. Assuming that "formal proof" is required by the law of Washington, and is not just a matter of local practice, its function is to provide evidence sufficient to support the findings required by CR 52(a)(2)(B). Although such evidence is usually in the form of live, pro forma testimony given by the party petitioning for a decree, there is no reason it cannot also be in the form of other admissible evidence, such as the legally cognizable agreement of the parties on matters other than irretrievable breakdown, custody or child support. Irretrievable breakdown, custody and child support were not in issue here, and the February 28 agreement provided sufficient support for the findings and decree of legal separation.