23 P.3d 515 (2001)
106 Wash.App. 12
James Francis LAVIGNE,[*] a single person, Appellant,
v.
Ron S. GREEN and Jane Doe Green, husband and wife; and Parent Engraving Company, a Washington corporation, Respondents.
No. 19020-0-III.
Court of Appeals of Washington, Division 3.
April 12, 2001.
Publication Ordered May 22, 2001.
*517 Robert E. Beach, III, Agostinelli & Beach, Spokane, for Appellant.
Everett B. Coulter, Jr., Evans, Craven & Lackie, Spokane, for Respondents.
*516 KURTZ, C.J.
During the course of voluntary mediation, James Francis Lavigne agreed to dismiss his lawsuit against Ron S. Green and accept the sum of $100,000 in settlement of his claims. Later, he refused to sign the settlement agreement. When Mr. Green moved to enforce the settlement agreement, Mr. Lavigne argued that under CR 2A and RCW 2.44.010(1), he was not bound by his agreement to settle the lawsuit. Additionally, he argued that he was not obligated to sign the agreement because it contained terms to which he had not agreed. The superior court granted Mr. Green's motion and ordered the settlement agreement enforced. We conclude CR 2A bars evidence of a noncomplying settlement agreement only if there is a dispute regarding the existence or material terms of the agreement. We further conclude that a party's change of mind regarding the sufficiency of the settlement amount does not make the settlement agreement disputed within the meaning of CR 2A. But, we finally conclude that the parties' failure during the mediation to address other terms of the agreement, such as the release and hold harmless provisions, created issues of material fact regarding whether the agreement was disputed for the purposes of CR 2A and whether there was an enforceable agreement. Reverse and remand.

FACTS
James Lavigne is an artist who rented space in a building located in downtown Spokane. Ron S. Green was a neighboring tenant who started a fire that spread to Mr. Lavigne's studio. Mr. Lavigne filed a complaint seeking damages incurred as a result of the fire. His damages included the loss of his artwork and personal effects.
The parties agreed to nonbinding mediation. Both parties attended the mediation. Also in attendance was Pamela Jones, the insurance adjuster on the case. It is undisputed that at the end of the day, after several offers and counteroffers, the parties agreed to settle the case for $100,000.
Mr. Lavigne concedes that after talking with his lawyer, he agreed to settle his case for $100,000. Mr. Lavigne recalls that his attorney asked the insurance adjuster: "if she would like three weeks to forward the check. She stated that it was only a matter of writing a check." Ms. Jones agrees that Mr. Lavigne's claims were settled for $100,000. But she also states that "[t]here were no additional terms or provisions or conditions on the settlement."
When Mr. Green's insurance company sent Mr. Lavigne the settlement agreement, he refused to sign it. In justifying his refusal, Mr. Lavigne stated that it was his understanding that the mediation process was voluntary and that he would not be bound by any settlement arising out of it until he actually signed the settlement agreement. He stated that the mediator and his attorney pressured him into accepting the $100,000 settlement, which he thereafter realized was an inadequate amount. Moreover, the settlement agreement contained terms to which he had not agreed. Specifically, he identified the provisions of the agreement that required him to release Mr. Green, hold Mr. Green harmless from any and all claims, and to pay all lienable claims. When Mr. Lavigne refused to sign the settlement agreement, his attorney withdrew.
Mr. Green then moved to enforce the settlement. The trial court granted the motion and ordered that the settlement, as described *518 in the agreement, would be enforced. Mr. Lavigne appeals.
On appeal, Mr. Lavigne argues that CR 2A and RCW 2.44.010 preclude the enforcement of the disputed settlement agreement. He contends that the agreement is unenforceable because it was not reduced to writing and signed by him or made on the record in open court. He further contends that the agreement is unenforceable because it contains material terms to which he did not agree.

ANALYSIS
The standard of review is de novo because the motion to enforce a settlement agreement is like a summary judgment motion. "When a moving party relies on affidavits or declarations to show that a settlement agreement is not genuinely disputed, the trial court proceeds as if considering a motion for summary judgment." Brinkerhoff v. Campbell, 99 Wash.App. 692, 696, 994 P.2d 911 (2000). Additionally, the application of a court rule to particular facts is a question of law, reviewable de novo. State v. Tatum, 74 Wash.App. 81, 86, 871 P.2d 1123 (1994).
Enforcement of a settlement agreement is governed by CR 2A and RCW 2.44.010. CR 2A provides as follows:
No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.
In the same vein, RCW 2.44.010 provides:
An attorney and counselor has authority:
(1) To bind his client in any of the proceedings in an action or special proceeding by his agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him, or signed by the party against whom the same is alleged, or his attorney[.]
We focus on CR 2A instead of RCW 2.44.010 because Mr. Lavigne was present at the mediation and authorized the settlement of his lawsuit for $100,000.
CR 2A applies only when (1) the agreement was made by the parties or attorneys "in respect to the proceedings in a cause," and (2) the purport of the agreement is disputed. In re Marriage of Ferree, 71 Wash.App. 35, 39, 856 P.2d 706 (1993). When these elements are met, CR 2A supplements but does not supplant the common law of contracts. "`It precludes enforcement of a disputed settlement agreement not made in writing or put on the record, whether or not common law requirements are met.'" In re Patterson & Taylor, 93 Wash.App. 579, 582-83, 969 P.2d 1106 (1999) (quoting Ferree, 71 Wash.App. at 39-40, 856 P.2d 706).
The threshold issue is whether CR 2A forbids the superior court's consideration of the settlement agreement because it is disputed by Mr. Lavigne and not evidenced by a writing or statement that complies with the court rule. Mr. Lavigne argues that in a contested motion to enforce a settlement agreement, the court cannot consider evidence of an oral agreement, unless the oral agreement complies with CR 2A. In response, Mr. Green asserts that because Mr. Lavigne concedes that he and his attorney agreed to settle the case for $100,000, this is not an agreement "the purport of which is disputed," within the meaning of CR 2A.
Mr. Lavigne relies upon Bryant v. Palmer Coking Coal Co., 67 Wash.App. 176, 858 P.2d 1110 (1992) and Eddleman v. McGhan, 45 Wash.2d 430, 275 P.2d 729 (1954). Mr. Green relies upon Ferree.
In Bryant, the Bryants brought a quiet title action against the Palmer Coking Coal Company, claiming rights in two parcels of real property based upon breach of contract and adverse possession. The parties and their attorneys negotiated a settlement agreement. The Bryants' attorney later sent the Coal Company a letter summarizing the details of the agreement. The Coal Company then decided it did not wish to *519 proceed with the settlement and its attorney so informed the Bryants. The Coal Company asserted that the framework of the agreement had been discussed but that many details were left to future agreement. The Bryants then filed a motion to enforce the settlement agreement. After an evidentiary hearing, the trial court ruled that the parties had entered into an enforceable settlement agreement. The court appointed a special master to resolve any issues not agreed upon by the parties.
Palmer Coking Coal Company appealed. Like Mr. Lavigne, the Coal Company contended that the agreement was unenforceable under CR 2A and RCW 2.44.010(1) because it was not in writing signed by the party against whom enforcement was sought and was not entered on the record in open court. The appellate court agreed, reasoning that strict compliance was required:
In light of the underlying purpose of CR 2A and RCW 2.44.010, we hold that the alleged settlement agreement is unenforceable because it was not stipulated to on the record in open court or memorialized by a writing signed by the party to be bound.
Bryant, 67 Wash.App. at 179, 858 P.2d 1110. Bryant based its holding on Eddleman.
In Eddleman, a third party transferee of a check sued the maker of the check. As a defense, the maker of the check pleaded an offset in the form of an agreement to settle an unrelated lawsuit involving the same two parties. The court refused to consider the alleged settlement, stating:
The purpose of the cited rule and statute [RCW 2.44.010(1) and verbatim predecessor of CR 2A] is to avoid disputes and to give certainty and finality to settlements and compromises, if they are made. While the compromise of litigation is to be encouraged, negotiations toward a compromise are not binding upon the negotiators. Where, as here, it is disputed that the negotiations culminated in an agreement, noncompliance with the rule and statute leaves the court with no alternative. It must disregard the conflicting evidence as they direct.
Eddleman, 45 Wash.2d at 432, 275 P.2d 729. Mr. Lavigne urges us to conclude that CR 2A as interpreted in Bryant and Eddleman forbids the consideration of his settlement with Mr. Green, even if Mr. Green can show that Mr. Lavigne agreed to settle his lawsuit for $100,000.
In Ferree, divorcing spouses and their attorneys negotiated the terms of a settlement agreement with the assistance of a court commissioner. The agreement was not reduced to writing or put on the record of the court. After Mr. Ferree repudiated the agreement and dismissed his attorney, Ms. Ferree successfully asked the trial court to enforce the agreement.
The appellate court identified two criteria governing whether the "purport" of an agreement is disputed within the meaning of CR 2A. The court stated that "there must be a dispute over the existence or material terms of the agreement, as opposed to a dispute over its immaterial terms." Ferree, 71 Wash.App. at 40, 856 P.2d 706. Additionally, the court stated that the dispute must be a genuine one. Thus, the issue was not whether the agreement was disputed in the sense that Mr. Ferree did not wish to abide by it. Rather, the issue was whether "the agreement was disputed in the sense that Mr. Ferree had controverted its existence or material terms in such a way as to raise a genuine issue of fact." Id. at 45, 856 P.2d 706.
We agree with Ferree. "The purpose of CR 2A is not to impede without reason the enforcement of agreements intended to settle or narrow a cause of action; indeed, the compromise of litigation is to be encouraged." Ferree, 71 Wash.App. at 40-41, 856 P.2d 706. In order for CR 2A to apply and to bar evidence of a noncomplying settlement agreement, the "purport" of the agreement must be disputed. This means that there must be a dispute regarding the existence or material terms of the agreement. A litigant's remorse or second thoughts about an agreement is not sufficient.
For a time, Mr. Lavigne represented himself before the superior court. In submissions to the court in response to the motion to enforce the settlement agreement, *520 he candidly stated that his principle complaint was the amount of the settlement, which he regarded as wholly insufficient. After agreeing to settle the case for $100,000, Mr. Lavigne decided that the settlement proceeds would be insufficient to meet the personal obligations associated with the lawsuit. We hold that Mr. Lavigne's second thoughts about the amount of the settlement and his desire not to abide by it do not make the agreement disputed within the meaning of CR 2A.
On the other hand, Mr. Lavigne raises issues regarding whether the parties' failure to address other terms of the agreement rendered it disputed for the purpose of CR 2A or unenforceable as a contract. Mr. Green concedes that the parties did not address the terms of the release, indemnity, and hold harmless provisions of the agreement. Ordinarily, the terms of the release, indemnity, and hold harmless agreement are material. See, e.g., Howard v. Dimaggio, 70 Wash.App. 734, 855 P.2d 335 (1993). Here, the terms of the indemnity, hold harmless, and release provisions may or may not be material; to this point, Mr. Lavigne has not identified any liability or adverse consequence to which he would be exposed by the terms of these provisions and he has not offered any evidence of subrogated or lienable claims.
Mr. Lavigne also questions whether it was an enforceable contract. Settlement agreements are governed by general principles of contract law. Stottlemyre v. Reed, 35 Wash.App. 169, 171, 665 P.2d 1383 (1983). In determining whether settlement discussions are sufficient to establish a contract even though the parties contemplate a formal agreement, we consider, among other things, whether the parties have addressed all the material terms of the agreement. Morris v. Maks, 69 Wash.App. 865, 869, 850 P.2d 1357 (1993). Here, the evidence shows that the parties agreed only to the amount of the settlement.
In summary, after considering all the evidence in the light most favorable to Mr. Lavigne, we conclude that Mr. Lavigne has raised genuine issues of fact regarding whether the settlement agreement is disputed within the meaning of CR 2A. Further, we conclude that disputed material facts exist regarding whether Mr. Lavigne and Mr. Green achieved an enforceable agreement. We reverse and remand for an evidentiary hearing.
WE CONCUR: SWEENEY, J. and GREEN, J.P.T.
NOTES
[*] For the purposes of this order, the appellant's name will be spelled as it appears in the complaint.