IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 80931-8-I |
| ELAINA D. AUDETTE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| DANIEL R. AUDETTE, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Daniel Audette appeals the modified parenting plan entered by the trial court as inconsistent with the parties' CR 2A agreement. He also contends the trial court abused its discretion by failing to clarify the terms of the residential schedule and amend it to add subsequent agreed terms. Finally, he argues that the trial court erred in imposing attorney fees based on his intransigence. We conclude that the trial court properly incorporated the terms of the parties' CR 2A agreement in their modified parenting plan and that it acted within its discretion to reject additional terms to the residential schedule and award attorney fees based on intransigence. We affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

## FACTS

Elaina Audette and Daniel[1] have a young son. They dissolved their marriage and entered a parenting plan in 2013 when their son was two years old. The parties agreed to "revisit" the parenting plan two years later when the child reached school age.

The parties engaged in mediation on June 1, 2018, seeking to modify the parenting plan. After mediation, Elaina and Daniel signed a "CR 2A Stipulation of Settlement and Agreement to Enforce," outlining the terms of their revised parenting plan and child support schedule.[2] The CR 2A agreement incorporated the original parenting plan and amended the school and holiday residential schedule with handwritten changes.

The modified parenting plan listed 10 holidays. The parties placed asterisks next to the Martin Luther King Jr. Day, Memorial Day, and Labor Day holidays. Near the bottom of the page is an asterisk followed by the sentence, "If Holiday would result[ ] in 3 w[ee]kend[s], in a row, other parent to receive weekend following holiday and then their regular weekend." Another asterisk is below that statement at the very bottom of the page with the following statement, "[B]egin release from school Friday to return to school Tuesday or 9:00 am if no school." The CR 2A agreement tasked Elaina's attorney with incorporating its language in a modified parenting plan and Daniel's attorney with filing the document with the court.

---

[1] We refer to Elaina and Daniel Audette by their first names for purposes of clarity and mean no disrespect by doing so.

[2] The child support schedule is not at issue in this appeal.

Elaina's attorney drafted the modified parenting plan and sent the document to Daniel's attorney on July 11, 2018. Elaina's attorney noted that mediation failed to address the Thanksgiving holiday and proposed Elaina have the child for Thanksgiving in even years and spring break in odd years. Daniel then proposed several more changes, including make-up days when summer vacation "impinges on other parents['] time," adding Halloween as a designated holiday, and imposing consistent exchange times at 8:30 a.m. Elaina agreed to add Halloween and to 8:30 a.m. transfer times but the parties could not agree on the parenting plan as a whole.

In October 2018, the parties submitted their issues to arbitration. At arbitration, Elaina proposed a modified parenting plan that included the following language like that in the CR 2A agreement establishing a three-weekend rule:

> If a holiday would result in a parent having three full weekends in a row, the other parent shall have the child the weekend following the holiday and shall subsequently enjoy his/her regular weekend under the residential schedule.

But her proposed plan did not designate which holidays were subject to the rule. Elaina's proposed parenting plan also set 9:00 a.m. as the transfer time after holidays. Elaina again agreed to add Halloween as a holiday and to all weekday exchanges at 8:30 a.m., but otherwise requested enforcement of the terms in the CR 2A agreement. Elaina also asked for an award of attorney fees due to Daniel's intransigence in failing to sign the parenting plan after the parties had reached a CR 2A agreement.

The arbitrator determined that Elaina's proposed parenting plan accurately reflected the three-weekend rule as it appeared in the CR 2A agreement and

3

acknowledged that the parties "agreed to include Halloween as a holiday and treat it as an overnight." The arbitrator declined to award attorney fees to Elaina because "the issues requiring resolution were made in good faith and appropriately resolved through this process."

After arbitration, Elaina's attorney drafted and e-mailed Daniel's attorney another modified parenting plan "consistent with" the CR 2A agreement and subsequent arbitration decision. She told Daniel's attorney that if Daniel refused to sign the parenting plan, Elaina would move to enforce the CR 2A agreement and request attorney fees. Daniel did not sign the parenting plan. Instead, he fired his attorney and began representing himself.

Daniel continued to propose changes to the parenting plan. He proposed the three-weekend rule apply to the weekend before the holiday and

> [i]f that change creates another three weekend conflict, then the impacted parent shall instead have the weekend following the holiday. If a change to either prior or following creates another three weekend conflict, then the impacted parent shall receive no relief for the three weekend conflict.

Elaina refused to make any changes beyond those to which the parties agreed to in the CR 2A agreement and consistent with the arbitration award. In January 2019, Elaina's attorney sent Daniel a revised version of the parenting plan to sign, correcting only a scrivener's error. She told Daniel that the plan was "consistent with the June 1, 2018 CR 2A and the Arbitration Award." She also told him, "If we do not receive the signed orders by [January 29, 2019], we will proceed with a motion to enforce and seek attorney fees."

Daniel did not sign the orders. Instead, he retained new counsel and continued to push for revisions to the parenting plan. The parties accused each other of CR 2A agreement violations, and communications became increasingly hostile. Daniel's new attorney argued that Elaina's parenting plan differed from the CR 2A agreement and insisted the parties return to arbitration. Elaina's attorney asserted that the parenting plan was not inconsistent with the CR 2A agreement and that she would pursue a motion to enforce it and seek attorney fees for intransigence if Daniel refused to sign the parenting plan.

Daniel still did not sign the parenting plan. Instead, his attorney sent three drafts of proposed parenting plans to Elaina with different versions of the three-weekend rule. He stated that Daniel was "willing to sign any of" them and "immediately" file it with the court.

Elaina moved to enforce the CR 2A agreement and arbitration award, requesting the trial court enter her proposed parenting plan. The proposed parenting plan included the three-weekend rule language from the CR 2A agreement but did not include Halloween as an overnight holiday and maintained the 9:00 a.m. exchange time. Elaina asked the court to award her attorney fees due to Daniel's intransigence.

Daniel responded and admitted that the "most literal definition of the CR 2A" three-weekend rule applied to only Martin Luther King Jr. Day, Memorial Day, and Labor Day but claimed, "I do not believe both parents would like for this to be the outcome, nor is it consistent with our standard practice, but that is what

was hand-written on the CR[ ]2A." He again requested 8:30 a.m. exchange times and Halloween as a designated overnight holiday.

The trial court concluded that Elaina's proposed parenting plan aligned with the parties' CR 2A agreement. The court rejected Daniel's requests to add Halloween as an overnight holiday and modify exchange times to 8:30 a.m., stating:

> [T]here has to be a parenting plan entered for these parties today. There has to be a child support order. And at some point, just like with every mediation, arbitration, neither side gets everything they want. There can be no complete satisfaction here today. But the Court is finding that this parenting plan closely enough resembles what was decided by the arbitrator. And so I am actually not inclined to make any changes today and to enter it.

The trial court later granted Elaina's request for fees due to Daniel's intransigence.

Daniel appeals.

ANALYSIS

Parenting Plan

Daniel claims that the trial court incorrectly construed the parties' CR 2A agreement. He also claims that the trial court abused its discretion by failing to decide the specific holidays subject to the three-weekend rule and rejecting his request for the Halloween overnight and 8:30 a.m. exchange times. We disagree.

We review a trial court's decision on a parenting plan for abuse of discretion. In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). A trial court abuses its discretion when a decision is manifestly unreasonable or

based on untenable grounds. <u>Kovacs</u>, 121 Wn.2d at 801. Failure to exercise discretion is an abuse of discretion. <u>In re Adoption of A.W.A.</u>, 198 Wn. App. 918, 922, 397 P.3d 150 (2017).

In determining a residential schedule, the trial court focuses on the best interests of the child and considers the factors in RCW 26.09.187(3).[3] RCW 26.09.200; <u>In re Marriage of Katare</u>, 125 Wn. App. 813, 823-24, 105 P.3d 44 (2004). An agreement between the parties is among these considerations. RCW 26.09.187(3)(ii).

CR 2A provides that a court will enforce an unrecorded written agreement between parties or attorneys "in respect to the proceedings in a cause" where "the purport" of the agreement is not in dispute. <u>See</u> <u>In re Marriage of Ferree</u>, 71 Wn. App. 35, 40-41, 856 P.2d 706 (1993). The party seeking to enforce a CR 2A

---

[3] When setting a residential schedule, the court considers:

    (i) The relative strength, nature, and stability of the child's relationship with each parent;

    (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

    (iii) Each parent's past and potential for future performance of parenting functions as defined in . . . RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

    (iv) The emotional needs and developmental level of the child;

    (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

    (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

    (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

    Factor (i) shall be given the greatest weight.

RCW 26.09.187(3).

agreement has the burden of showing that there is no genuine dispute about the material terms of the agreement. Ferree, 71 Wn. App. at 41.

Here, both parties and their attorneys signed the written CR 2A agreement and the provision at issue is clear. The modified parenting plan incorporated in the CR 2A agreement states that if the Martin Luther King Jr. Day, Memorial Day, or Labor Day holidays result in one parent having the child for three weekends "in a row," the other parent will have the "weekend following [the] holiday and then their regular weekend" as well. The handwritten edits state that the weekend will begin upon "release from school Friday" and will end upon "return to school [on] Tuesday or [at] 9:00 am if [there is] no school" on the return date. There is no genuine dispute about the content of the provision or the agreement by parties. Indeed, in his response to the motion to enforce, Daniel acknowledged that the three-weekend rule as written in the CR 2A agreement applies to only Martin Luther King Jr. Day, Memorial Day, and Labor Day holidays. Daniel's newfound desire to change the terms of the agreement does not amount to a genuine dispute about the material terms under CR 2A. See Ferree, 71 Wn. App. at 45.

Daniel's contention that the trial court abused its discretion by refusing to decide clearly the specific holidays to which the three-weekend rule applies lacks merit. The trial court appropriately enforced the terms of the CR 2A agreement in the modified parenting plan. Section 10 of the parenting plan is entitled "Holiday Schedule (includes school breaks)." The opening paragraph of that section reads:

> This is the Holiday Schedule for the child. If a holiday would result in a parent having three full weekends in a row, the other parent

shall have the child the weekend following the holiday and shall subsequently enjoy his/her regular weekend under the residential schedule. This provision is limited to the holiday schedule within this section.

Section 10 has a table with a column entitled "Holiday." The column lists all holidays and school breaks for a calendar year, including "Spring Break" and "Winter Break." The only holidays that always occur on a Monday and not during a "break" are Martin Luther King Jr. Day, Memorial Day, and Labor Day. Those holidays are subject to the three-weekend rule. The columns next to those three holidays clarify that residential time begins at "[r]elease from school on Friday or 5:30pm if school is not in session" and ends upon "[r]eturn to school on Tuesday or 9:00am if school is not in session." The table in Section 10 accurately reflects the three-weekend rule established in the CR 2A agreement mediated by the parties and clarified in the arbitration award.

Daniel also fails to show that the trial court abused its discretion by rejecting his request to designate Halloween as a holiday and move exchange times to 8:30 a.m. The parties agreed to these modifications outside their written agreement so the terms were not enforceable under CR 2A. While the trial court must consider any parental agreement entered knowingly and voluntarily when determining a parenting plan, such an agreement is only one of the many factors the court must consider under RCW 26.09.187(3). And the court has an obligation to act in the best interests of the child. RCW 26.09.002.

Here, the trial court made clear that "this has to stop" and that immediate entry of a parenting plan was in the best interests of the child. The court stated it was "concern[ed]" and "extremely reluctant" to make more changes to the

9

parenting plan because "there'd then be a disagreement among the parties about what I am writing, and that, that would be seen as an opportunity for the parties to start saying the Court should add other things."  Recognizing that the ongoing attempts to renegotiate the CR 2A agreement led to over a year of delay in entering a modified parenting plan, the trial court prioritized immediate stability for the child over "complete satisfaction" of the parents.  This was not an abuse of discretion.

Attorney Fees

Daniel argues the trial court erred in awarding Elaina attorney fees because substantial evidence does not support its determination that he was intransigent.  We disagree.

An award of attorney fees is within the discretion of the trial court and we review the court's decision for abuse of that discretion.  In re Marriage of Crosetto, 82 Wn. App. 545, 563, 918 P.2d 954 (1996).  "A trial court may consider whether additional legal fees were caused by one party's intransigence and award attorney's fees on that basis."  In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992).  Intransigence includes foot-dragging and obstruction.  Greenlee, 65 Wn. App. at 708.

Here, the parties reached a CR 2A agreement after mediation in June 2018.  Elaina's attorney drafted a parenting plan consistent with the terms of the CR 2A agreement and made several attempts to obtain Daniel's signature on the document.  Daniel refused to sign and renewed efforts to negotiate terms of the parenting plan.  The parties resorted to arbitration, which led to an award

confirming that Elaina's parenting plan aligned with the parties' CR 2A agreement. Still, Daniel refused to sign the document and continued his efforts to renegotiate the parenting plan. Daniel's actions forced Elaina to seek court enforcement of their CR 2A agreement and delayed the execution of a modified parenting plan until more than a year after the parties agreed to terms. Substantial evidence supports the trial court's finding that Daniel "was intransigent and that the intransigence caused [Elaina] to have to file the Motion to Enforce."[4]

We conclude that the trial court properly incorporated the terms of the parties' CR 2A agreement in their modified parenting plan and that it acted within its discretion to reject additional terms to the holiday schedule and award attorney fees based on intransigence. We affirm.

_Brennan, J_

WE CONCUR:

_Chun, J._                                   _Verellen, J._

---

[4] Elaina also requests attorney fees and costs on appeal. A party's intransigence in the trial court can support an award of attorney fees on appeal. In re Marriage of Mattson, 95 Wn. App. 592, 606, 976 P.2d 157 (1999). We exercise our discretion to award Elaina her attorney fees and costs on appeal consistent with RAP 18.1.