**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/walcdareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FAIRWAY COLLECTIONS, LLC,

                Respondents,

        v.

MICHAEL I. TURNER and JANE DOE TURNER, husband and wife,

                Appellants.

No. 85042-3-I

DIVISION ONE

PUBLISHED OPINION

CHUNG, J. — Fairway Collections, LLC, as Arbor Health's assignee, sued Michael Turner to collect medical debt he owed to Arbor Health. Turner asserted counterclaims against Fairway for violations of the Washington Consumer Protection Act (CPA), the Washington Collection Agency Act (CAA), and the federal Fair Debt Collection Practices Act (FDCPA). Initially, the counterclaims were all based on whether the debt principal Fairway sought to collect was authorized because Turner had not been screened for charity care. After Turner was granted charity care that paid for 75 percent of his debt, Fairway accepted his payment and stipulated to the dismissal of its claim against him. Fairway moved to enforce a purported settlement agreement, and the court denied the motion.

Fairway moved for summary judgment on Turner's counterclaims. Subsequently, based on information obtained during discovery, Turner sought to

No. 85042-3-I/2

amend his counterclaims to add claims based on the rate and amount of Fairway's collection fee.

The trial court granted Fairway's motion for summary judgment and dismissed Turner's counterclaims. We conclude that there are genuine issues of material fact as to each counterclaim. We therefore reverse the dismissal of Turner's counterclaims, affirm the trial court's denial of Fairway's motion to enforce settlement, and remand to the trial court for further proceedings consistent with this opinion.

FACTS

Michael Turner was in a serious car accident on July 17, 2016, near Morton, Washington. He cannot recollect the accident, and his first real memory is waking up at a hospital in Seattle. On the day of the accident, unbeknownst to him at the time, Turner was first treated at Morton General Hospital,[1] the hospital nearest the scene of the accident, before transfer to Seattle for further care. Turner believed insurance had paid all his medical bills related to the accident. According to Arbor Health, it tried to collect its bill from him, though Turner claims he never received any communication from it.

On November 16, 2017, Morton General Hospital sent to Turner, "through Fairway," a "courtesy reminder" letter stating the amount due and warning, "Should it be necessary to refer this account to Fairway Collections for collections, a collection fee of 35% of the principal amount will be added." That

---

[1] Lewis County Hospital District No. 1 does business as Arbor Health and was formerly known as Morton General Hospital.

No. 85042-3-I/3

letter does not use the words "charity care," but it states, "Financial aid is available to those who qualify."

In December 2017, Arbor Health assigned Turner's debt of $7,432.42 to Fairway, a Washington State licensed collections agency. From December 2017 to November 2020, Fairway claimed it sent four collection letters to Turner at two different addresses, and that each letter demanded the $7,432.42 principal plus collection fees of $2,972.77.[2] The collection fees, $2,972.77, amount to 40 percent of the principal of $7,432.42, not the 35 percent amount referenced in the November 2017 letter from Morton General Hospital. Fairway's form letters do not mention charity care or financial aid.

In January 2021, Fairway sued Turner for the debt principal and collection fees. Turner does "not recall ever receiving a collection letter or statement regarding [his] trip to the emergency room at Arbor Health." He called Fairway and learned the claimed debt was for treatment related to his July 2016 accident. Turner was "frantic" to protect his good credit and called first one attorney and then engaged another to address Fairway's complaint.

In February 2021, Turner answered Fairway's complaint[3] and raised three counterclaims: (1) a *per se* violation of the CPA[4] predicated on Fairway's

---

[2] Fairway claims it did not retain copies of the actual letter and instead relies on a template letter and a declaration from Gwen Turner as evidence of the contents of the letters. Gwen Turner is a member of Fairway Collections, LLC, and its Chief Operations Officer. Because she shares a surname with the appellant, Michael Turner, to avoid confusion, this opinion refers to Gwen Turner by both her first and last name.

[3] Fairway filed suit in Grays Harbor County District Court, but Turner removed to Grays Harbor County Superior Court because his answer sought injunctive relief. See RCW 4.14.010.

[4] Chapter 19.86 RCW.

No. 85042-3-I/4

violation of the CAA;[5] (2) violation of the CPA, and (3) violation of the federal FDCPA, also constituting a *per se* CPA violation.[6] Each of Turner's counterclaims alleged Fairway attempted to collect a debt that was not authorized because he was not screened for charity care before the debt was assigned to Fairway.[7] The parties do not dispute that Arbor Health did not screen Turner for charity care before assigning his debt to Fairway.

In April 2021, Turner offered to settle with Fairway. In the meantime, Turner had applied for charity care, and on May 10, 2021, Arbor Health notified him he had been approved and reduced his principal debt to $1,858.11. The next day, May 11, 2021, Fairway emailed Turner that it had authority to accept a mutual release and would circulate a proposed settlement agreement. Turner rejected Fairway's proposed agreement, stating that because it was conditioned on including a release of claims against Arbor Health, a nonparty, it was a counteroffer.

On June 16, 2021, Fairway moved to enforce its proposed settlement agreement. On June 18, 2021, Turner sent a check for $1,858.11 to Fairway, thereby satisfying his debt to Arbor Health.

The parties suspended their discovery while Fairway's motion to enforce settlement was pending. After the court denied Fairway's motion to enforce in

---

[5] Chapter 19.16 RCW.

[6] 15 U.S.C. § 1692.

[7] State law requires hospitals to make reduced cost charity care available to low-income patients. RCW 70.170.060. Initiation of collection efforts "shall be precluded pending an initial determination of sponsorship status"—i.e., until a person is screened for charity care eligibility. WAC 246-453-020(1).

No. 85042-3-I/5

October 2021, Turner subpoenaed Arbor Health for contracts between it and Fairway. Fairway objected to producing its collection contract with Arbor Health until the court entered a protective order. Shortly thereafter, in its own initial responses to Turner's discovery requests, Fairway stated it would provide the collection contract upon entry of a stipulated protective order, and it filed a motion for a protective order relating to the subpoena to Arbor Health. The parties exchanged drafts and agreed to a stipulated protective order relating to the collection contract in November. Fairway agreed to sign and file the protective order.

Meanwhile, Arbor Health responded to Turner's subpoena in November 2021 with a redacted copy of an earlier contract between it and Fairway. The parties then stipulated to striking the hearing on Fairway's motion for a protective order relating to the subpoena to Arbor Health. However, Turner heard nothing further regarding the stipulated protective order relating to Fairway's discovery responses that Fairway had agreed to file.

Instead, on January 13, 2022, Fairway filed a motion for summary judgment. On January 24, 2022, Fairway supplemented its production to Turner, including a heavily redacted copy of its current contract with Arbor Health. The next day, Arbor Health supplemented its production to Turner with the same contract but unredacted. A previously redacted part of the contract states that, for non-Medicare accounts, "Collection fees shall be added . . . at the rate of 35% of the principal amount assigned."

5

No. 85042-3-I/6

On February 4, Turner moved for leave to amend his counterclaims on the basis that he had just learned that Fairway was not authorized to collect fees of more than 35 percent. On February 17, Turner moved to strike Fairway's affidavits and responded to its motion for summary judgment. He argued again that "Fairway sought to collect . . . more that it was legally allowed to collect." He also argued that the court should grant him a continuance to depose Fairway's COO, Gwen Turner, and Arbor Health's CFO, Richard Boggess.

Fairway replied on February 23. Its reply included a third declaration from Gwen Turner. Her declaration states that, "Due to a typographical error, the rate for non-Medicare accounts was typed incorrectly as [redacted]%." Fairway argued that "[t]he amount of the collection cost is not an issue in this case" because it "had the right to charge [Turner] a collection cost under RCW 19.16.500." On February 22, Turner filed an amended motion for leave to amend. He argued that "[t]he 2014 collection contract reveals . . . that Fairway demanded . . . several hundred dollars more than . . . allowed under the collection contract between Arbor Health and Fairway."[8]

On February 28, the trial court heard oral argument on both Turner's motion for leave to amend and Fairway's motion for summary judgment on Turner's counterclaims. The court orally denied Turner leave to amend[9] and granted Fairway's motion for summary judgment. The court's written order stated

---

[8] A collection fee of 35 percent of the $7,432.42 principal would have been $2,601.35.
[9] The court said that "leave is freely given," but "based on the issues of undue delay and prejudice to [Fairway], and futility, [it would] deny the motion to amend."

No. 85042-3-I/7

that it considered Fairway's motion for summary judgment as to Turner's counterclaims, Turner's response, and Fairway's reply. It dismissed Turner's counterclaims with prejudice.[10] The court's written order did not address the motion for leave to amend.

Turner appeals the trial court's denial of leave to amend his counterclaims and its dismissal of his counterclaims. Fairway cross-appeals and assigns error to the trial court's denial of its motion to enforce the settlement agreement.[11]

DISCUSSION

On appeal of an order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Civil Rule (CR) 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "The moving party has the burden of showing that there is no genuine issue as to any material fact." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 70, 170 P.3d 10 (2007). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the

---

[10] At the same hearing, the court granted Fairway's unopposed motion to seal the contract between it and Arbor Health based on the parties' stipulated protective order.
[11] In May 2022, responding to the clerk of Division Two of this court, the parties stipulated to a trial court order dismissing with prejudice all of Fairway's claims against Turner.

No. 85042-3-I/8

litigation." Ranger Ins. Co., 164 Wn.2d at 552. A "material fact" is one upon which the outcome of the litigation depends. Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

The trial court granted summary judgment dismissing of all of Turner's counterclaims. Those counterclaims alleged, first, that Fairway's actions violated the CPA based on violations of the CAA or the FDCPA, and second, that the same actions independently violated the CPA.

I.      Summary Judgment Dismissal of CPA and FDCPA Claims

The CPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," RCW 19.86.020. The purpose of the CPA is to complement the body of federal law governing restraints of trade, unfair competition, and unfair, deceptive, and fraudulent acts and practices in order to protect the public and foster honest and fair competition. Panag, 166 Wn.2d at 37 (citing RCW 19.86.920).

To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986), cited in Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009). A CPA claim may be predicated on either a *per se* violation of a statute or on a deceptive practice unregulated by statute but involving the public interest. Id. at 37 n.3.

8

No. 85042-3-I/9

### A. *Per Se* Violation of the CPA

A *per se* claim allows a plaintiff to satisfy the first three elements of the CPA's five-element test by proving a predicate violation of "a statute that contains a specific legislative declaration of public interest impact." RCW 19.86.093(2); Hangman, 105 Wn.2d at 784-89. The CAA contains such a declaration. Panag, 166 Wn.2d at 53; see also RCW 19.16.440 ("the commission . . . of an act or practice prohibited by RCW 19.16.250 . . . [is] declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purposes of the application of the [CPA]."). A violation of the FDCPA also constitutes a *per se* violation of the CPA, "reflecting the public policy significance" of the "highly regulated field" of consumer debt collection. Panag, 166 Wn.2d at 53.

Turner alleges two different ways that Fairway violated either the CAA or the FDCPA, and thus violated the CPA *per se*. First, Turner claims Fairway attempted to collect debt principal it was not authorized to collect because he was not screened for charity care when Fairway filed its complaint. Second, he claims Fairway attempted to collect collection fees greater than Arbor Health authorized it to, i.e., 40 percent instead of 35 percent.

#### 1. Fairway's efforts to collect the principal debt without screening for charity care

Turner alleges that Fairway attempted to collect debt principal not authorized for collection because he was not screened for charity care before Fairway took action to collect his debt to Arbor Health. Fairway argues that it is

9

No. 85042-3-I/10

not a hospital responsible for charity care, so it was authorized to collect the debt principal. We agree with Turner that there is a genuine issue of material fact about whether Fairway violated the FDCPA and, therefore, the CPA *per se* because it falsely represented the character and status of the debt principal it sought to collect.

One predicate for Turner's *per se* CPA claim is a claimed violation of the CAA. The CAA includes as a prohibited practice that no licensed debt collector shall "[t]hreaten to take any action against the debtor which the licensee cannot legally take at the time the threat is made." RCW 19.16.250(16).

Turner also predicates his *per se* CPA claim on violations of the federal FDCPA.[12] Similar to the CPA's broad prohibition of "unfair or deceptive acts or practices in the conduct of any trade or commerce," RCW 19.86.020, § 1692e of the federal FDCPA broadly prohibits the "use of any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It includes a nonexclusive list of sixteen practices that are deemed to be "false, deceptive, or misleading," one of which encompasses the false representation of "the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). Turner also claims Fairway violated FDCPA § 1692f, which implements a sweeping ban on the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Among eight

---

[12] For a plaintiff to recover under the FDCPA, there are three threshold requirements: (1) the plaintiff must be a "consumer"; (2) the defendant must be a "debt collector"; and (3) the defendant must have committed some act or omission in violation of the FDCPA. Robinson v. Managed Accounts Receivables Corp., 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009). Fairway does not dispute that the first two elements are satisfied.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 85042-3-I/11

nonexclusive examples of "unfair or unconscionable means," of relevance here, § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

As to Turner's claims based on collection letters sent by Fairway, the evidence before the trial court included Turner's declaration that he could not recall receiving any letter from Fairway or Arbor Health and did not know he was ever a patient at Arbor Health. According to Arbor Health's CFO, Richard Boggess, its former billing service provider destroyed billing statements sent during 2016-2017 but on "information and belief," he believes the letters Arbor Health sent Turner would have included information about charity care. Fairway also provided evidence that it sent a letter to Turner in 2016 stating it would add a collection fee of 35 percent, as well as a letter in 2017 and three more in 2018. Fairway did not maintain copies of those letters, but Gwen Turner provided a template and attested to how the template's blank fields would have been filled in.

The record also contains unrebutted evidence that Arbor Health properly assigned its debt to Fairway. Turner provided no evidence as to the content of the letters, as he claimed not to have received them. Thus, the only evidence at summary judgment was that Arbor Health included charity care information in the letters it sent, even if Turner did not receive them. Without any competent evidence of a letter or bill sent to Turner prior to the filing of its lawsuit that failed to apprise him that he could seek charity care to reduce the amount of his debt

11

No. 85042-3-I/12

principal, there is no genuine issue of material fact as to whether such letters violated the CAA or the FDCPA. Thus, the trial court properly dismissed Turner's claims for *per se* CPA violations based on letters sent in 2016, 2017, 2018, and 2020.[13]

Turner also claims the complaint in the present lawsuit[14] violated the CPA, CAA, and/or the FDCPA[15] because in it, Fairway failed to account for his eligibility for charity care and, thus, sought to collect debt principal that it was not authorized to collect. There is no dispute that, at the time Fairway filed its suit against him, Turner had not been screened for charity care. The charity care act requires that "[a]n initial determination of [charity care] sponsorship status shall precede collection efforts directed at the patient." RCW 70.170.060(10)(c). The record evidence shows that when Turner subsequently applied for charity care in May 2021, he was awarded 75 percent sponsorship. When Fairway learned that Arbor Health awarded Turner charity care, as Gwen Turner attested, "Fairway credited the balance, accepted the payment for the remaining balance from Defendant's attorney and dismissed the collection case based on the payment of the charity care amount."

---

[13] Turner's counterclaims also alleged the content of collection letters Fairway declared it sent him violated RCW 19.16.250(28) & (29). Below, Turner conceded those claims.

[14] The FDCPA's statute of limitations is one year. 15 U.S.C. § 1692k(d). Thus, Turner acknowledges that only his claim regarding the complaint with which Fairway initiated its lawsuit is within the FDCPA statute of limitations, not the content of any letters Fairway sent to Turner before it filed suit. Because Turner first became aware of Fairway's collection efforts when it sued him, the FDCPA's statute of limitations accrued as of the date Fairway filed its suit, which was January 4, 2021. See Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997).

[15] A lawsuit can be a communication subject to the CPA and FDCPA. Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1031-32 (9th Cir. 2010) ("We decide this issue and conclude that a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f.").

No. 85042-3-I/13

However, the FDCPA is a strict liability statute, <u>Clark v. Cap. Credit & Collection Servs., Inc.</u>, 460 F.3d 1162, 1175 (9th Cir. 2006), meaning that debt collectors are "liable for violations that are not knowing or intentional," <u>Reichert v. Nat'l Credit Sys., Inc.</u>, 531 F.3d 1002, 1005 (9th Cir. 2008). In determining whether a debt collector's conduct violates § 1692e or f, a court "undertake[s] an objective analysis" and asks "whether the 'least sophisticated debtor would likely be misled by a communication.' " <u>Stimpson v. Midland Credit Mgmt., Inc.</u>, 944 F.3d 1190, 1196 (9th Cir. 2019) (quoting <u>Gonzales v. Arrow Fin. Servs.</u> 660 F.3d 1055, 1061 (9th Cir. 2011)). "This is a legal, not a factual, determination." <u>Id.</u> Under this standard, a debtor need not show that he has "actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* 'least sophisticated debtor' likely would be misled." <u>Tourgeman v. Collins Fin. Servs., Inc.</u>, 755 F.3d 1109, 1117-18 (9th Cir. 2014).[16]

Further, the FDCPA punishes only material false statements. <u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1033 (9th Cir. 2010). Material false statements are "those that could 'cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort.' " <u>Afewerki v. Anaya Law Grp.</u>, 868 F.3d 771, 773 (9th Cir. 2017) (quoting <u>Tourgeman</u>, 755 F.3d at 1121). In contrast, "immaterial statements, by definition,

---

[16] The hypothetical least sophisticated debtor is "distinguished from the ordinary, reasonable person by being financially unsophisticated," and "is comparatively uninformed and naive about financial matters and functions as an 'average consumer in the lowest quartile . . . of consumer competence.' " <u>Stimpson</u>, 944 F.3d at 1196 (quoting <u>Evory v. RJM Acquisitions Funding L.L.C.</u>, 505 F.3d 769, 774 (7th Cir. 2007)); see also <u>Evon v. Law Offices of Sidney Mickell</u>, 688 F.3d 1015, 1027 (9th Cir. 2012) (the hypothetical least sophisticated debtor is "uninformed, naive, and gullible").

13

No. 85042-3-I/14

do not affect a consumer's ability to make intelligent decisions" because they are "mere technical falsehoods that mislead no one." Donohue, 592 F.3d at 1034.

Fairway's complaint alleging Turner owed $7,432.42 of debt principal is material for the purposes of the FDCPA because such a complaint filed in court and served on a consumer would likely mislead the hypothetical least sophisticated debtor. As amended, Fairway's complaint describes Turner's debt as follows:

> Defendants became indebted to ARBOR HEALTH for an account receivable which was incurred in the ordinary course of ARBOR HEALTH's business, consisting of certain goods and medical services rendered to Defendant Michael I. Turner, which ARBOR HEALTH is duly licensed to render, for the principal assigned amount of $7432.42 plus collections costs per RCW 19.16.500 (Government) of $2972.97 for the goods and services provided on or about July 17, 2016 and on or about July 22, 2016, no part of which has been paid, despite demand being made for those sums.[17]

The complaint does not include any mention of charity care or advise Turner that he may be eligible.[18]

Fairway argues that any obligation to provide information about charity care did not apply to it, but rather, only to Arbor Health. It is true that the charity care law at the time Turner was hospitalized placed only on hospitals the obligation to make "every reasonable effort to determine . . . [t]he existence or

---

[17] The amount of collection costs is stated as either $2,972.97 or $2,972.77. The twenty-cent difference has no legal significance here.

[18] The original complaint, for an "account stated" rather than an "account receivable," states the same amounts due as debt principal and collection fees and specifies that no pre-judgment interest, late fees, handling fees, or treble damage amounts are owed. Like the amended complaint, it does not include any mention of charity care or advise Turner he may be eligible.

No. 85042-3-I/15

nonexistence of private or public sponsorship which might cover in full or part the charges for care rendered by the hospital to a patient." Former RCW 70.170.060(10)(a) (2018). But by the time Fairway filed the lawsuit seeking to collect the debt, the charity care law had been amended to create broader obligations relating to medical debt, beyond the hospital. Effective October 1, 2018, the law requires the following:

> (8)(a) All hospital billing statements and *other written communications concerning billing or collection of a hospital bill by a hospital* must include the following or a substantially similar statement prominently displayed on the first page of the statement in both English and the second most spoken language in the hospital's service area: You may qualify for free care or a discount on your hospital bill, whether or not you have insurance. Please contact our financial assistance office at [website] and [phone number].

RCW 70.170.060 (emphasis added).

The law has no deadline by which a former patient must apply for charity care. As Turner's experience shows, a patient may seek screening for charity care even after the bill has gone into collection. Even though the obligation to screen for charity care applies to Arbor Health, not Fairway, Fairway *is* responsible for including a notice about charity care when seeking to collect on a hospital bill under the plain language of RCW 70.170.060. Additionally, Fairway accepted this duty to notify debtors as a contractual obligation; its contract with Arbor Health states, "Client [Arbor Health] assigns all rights and claims to collect the account on its behalf" and, further, that "Fairway shall comply with all applicable laws and regulations relating to debt collections . . . ."

15

No. 85042-3-I/16

One purpose of the 2018 amendments to the charity care law is that patients are informed they may be eligible for charity care so they will inquire about their eligibility. But Fairway's complaint did not include that information. Instead, Turner was obliged to investigate and obtain assistance from counsel to seek a reduction of Arbor Health's bill.

Thus, the issue is not whether Fairway screened Turner. And it is immaterial whether Turner was eventually screened and deemed eligible for charity care, even though his ultimately successful application establishes that he was.[19] Rather, focusing the inquiry on the content of Fairway's complaint, there is a question of fact as to whether Fairway falsely represented the character, amount, or legal status of debt it sought to collect. See 15 U.S.C. § 1692e(2)(A) ("The false representation of the character, amount, or legal status of any debt [is a violation.]"). And a violation of the FDCPA is a *per se* violation of the CPA. Panag, 166 Wn.2d at 53.

Therefore, the record before the trial court establishes a genuine issue of material fact about whether, at the time Fairway filed its suit, it falsely represented the character, amount, and legal status of the debt it

---

[19] "Although the FDCPA is a strict liability statute, it excepts from liability those debt collectors who satisfy the 'narrow' bona fide error defense." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011) (citing Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1005 (9th Cir. 2008) (quotation omitted)). A debt collector cannot be held liable under the FDCPA if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). But Fairway does not raise this affirmative defense; it simply asserts that it is not a hospital so the charity care act cannot apply to it.

No. 85042-3-I/17

sought to collect in violation of FDCPA § 1692e. This same evidence

establishes a question of fact as to Turner's claim of a *per se* CPA

violation because a violation of the FDCPA constitutes a *per se* violation of

the CPA. [20] Id. at 53.

### 2. Fairway's efforts to recover collection fees

Turner also claims that Fairway violated the CAA, and therefore the CPA

*per se,* because it charged collection fees of 40 percent of the debt principal

when its contract with Arbor Health allowed it to charge only 35 percent.

Procedurally, Fairway disputes that this claim was encompassed by Turner's

initial counterclaims and argues the court properly denied Turner leave to amend

to add this claim. On the merits, Fairway claims that there was a clerical error in

the contract as to the proper amount Fairway could charge.

Lewis County Hospital District No.1 d/b/a Arbor Health is a public entity,

and the CAA allows collection agencies to charge a collection fee when collecting

debts for public entities in an amount "left to the agreement of the governmental

entity and its collection agency or agencies." RCW 19.16.500(1)(b). The CAA

defines as "reasonable" a contingent fee of up to 50 percent of the first $100,000

---

[20] Because the record creates a genuine issue of material fact as to Turner's claim of a violation of the FDCPA § 1692e, and thus the CPA *per se*, we need not determine whether the same actions by Fairway also separately violated the CAA, RCW 19.16.250(16), by threatening to take an action it could not legally take. The CAA is Washington's counterpart to the FDCPA, and "the CPA is intended to provide broader protection than exists under the common law or statute." Panag, 166 Wn.2d at 54. Also, we need not separately address whether Fairway's complaint's failure to mention charity care violates FDCPA § 1692f, because § 1692f is a "catch-all" provision that applies only to unfair conduct that does not violate any other section of the FDCPA. See, e.g., Baker v. Allstate Fin. Servs., Inc., 554 F. Supp. 2d 945, 953 (D. Minn. 2008) ("Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA."); Scott v. Portfolio Recovery Assocs., LLC, 139 F. Supp. 3d 956, 969 (S.D. Iowa 2015) (dismissing § 1692f claim because garnishing wages without authorization falls under § 1692(e)(5)).

No. 85042-3-I/18

and up to 35 percent over $100,000 of unpaid debt. RCW 19.16.500(1)(b).

However, the CAA states that it is a prohibited practice for a licensed collection

agency to

> (21) Collect or attempt to collect in addition to the principal amount of a claim any sum other than allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs. A licensee may collect or attempt to collect collection costs and fees, including contingent collection fees, *as authorized by a written agreement or contract*, between the licensee's client and the debtor, in the collection of a commercial claim. The amount charged to the debtor for collection services shall not exceed thirty-five percent of the commercial claim.

RCW 19.16.250(21) (emphasis added).

After Arbor Health produced an unredacted version of its contract with

Fairway, which showed that their 2014 contract stated the amount Fairway could

collect as a collection fee was 35 percent of the principal balance, Turner sought

leave to amend his counterclaims based on this newly produced evidence. The

court denied the request for leave to amend in an oral ruling, and Turner assigns

error to that ruling. However, we need not address whether the court abused its

discretion in denying the motion to amend, because the summary judgment

record considered by the court included the unredacted 2014 contract, and the

briefing and oral argument by both parties addressed the issue of the correct

amount of Fairway's collection fee.[21] "When issues not raised by the pleadings

---

[21] Along with his motion for leave to amend, Turner filed a declaration attaching the unredacted 2014 contract that Arbor Health provided in response to his subpoena showing the 35 percent collection fee. Turner's response to Fairway's motion for summary judgment includes argument that the 2014 contract with Arbor Health did not support a 40 percent fee and refers to the unredacted 2014 contract. Fairway's reply brief on summary judgment included a supplemental declaration from Gwen Turner admitting that the 2014 contract produced by Arbor

No. 85042-3-I/19

are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." CR 15(b).

Turning to the merits of the collection fee issue, the summary judgment record before the trial court included this evidence:

- The November 16, 2017, letter from Morton General Hospital addressed to Turner that was sent "through Fairway," stating that if the bill were sent to collections, Fairway would add a collection fee of 35 percent.

- Arbor Health's unredacted 2014 contract with Fairway stating that, "pursuant to . . . RCW 19.16.500," "[c]ollection fees shall be added . . . at the rate of 35% of the principal amount assigned."

- Fairway's amended complaint seeking $2,972.97 in collection fees on debt principal of $7,432.42, which amounts to collection fees at the rate of 40 percent, not 35 percent.

- Gwen Turner's declaration stating that Arbor Health's contract contained a "typographical error."[22]

Because Turner's counterclaim depends on whether Arbor Health's contract authorized it to collect fees of 40 percent, the amount of collection fees

---

Health contained a different amount for the fee, but claiming it was a "typographical error." And at oral argument on the summary judgment motion, both parties argued the issue of the correct amount of Fairway's collection fee. Thus, the unredacted contract showing a 35 percent agreed to collection fee and Turner's claims based on the allegation that Fairway charged more than 35 percent were before the court on summary judgment.

[22] On appeal, Turner argues that Gwen Turner's February 22, 2022, declaration is not admissible because "[e]xtrinsic evidence is not admissible to contradict the plain language of a contract." Turner misapplies the parol evidence rule. The issue here is not the formation of a contract or the meaning of a term. Instead, Gwen Turner's February 22 declaration is admissible evidence because it is a sworn declaration made on personal knowledge about whether Arbor Health's unredacted contract stating 35 percent contains a typographical error. CR 56(e). Fairway argues the same declaration is "undisputed evidence that the collections costs [it] demanded w[ere] proper" because "Turner failed to present any evidence that the collection costs were inflated." Although Turner challenged Gwen Turner's declaration below, he does not assign error to any issue regarding its admissibility on appeal. But his failure to challenge it does not mean Gwen Turner's declaration is the only evidence regarding this issue. The 2014 contract itself, which states the collection fee was 35 percent, was part of the summary judgment record, as Turner's attorney attested in his declaration that Arbor Health had provided it in response to a subpoena.

No. 85042-3-I/20

authorized by the contract is a material fact. Viewing the evidence in the light most favorable to Turner, there is a genuine issue of material fact because the letter, the contract, Fairway's complaint, and the declaration cannot be reconciled with one another. If Gwen Turner's February 22 declaration is correct and Arbor Health's contract contains a typo, then Fairway had contractual authority to seek 40 percent in fees, but the November 16 letter Fairway sent to Turner is incorrect.[23] If, on the other hand, Arbor Health's unredacted contract is correct and Fairway could collect 35 percent for non-Medicare accounts, then the letter Fairway sent for Arbor Health is correct, but the amount of fees Fairway sought to collect was not authorized and Gwen Turner's February 22 declaration is not correct.

Reasonable minds could differ on these facts, so a genuine issue exists. Ranger Ins. Co., 164 Wn.2d at 552. We thus conclude the summary judgment evidence established genuine issues of material fact regarding Turner's counterclaims alleging a violation of the CAA as to the collection fees and, thus, a *per se* CPA violation.

B.  Injury and Causation Elements of CPA Claim

If there is sufficient proof regarding the violations of the FDCPA as to debt principal and the CAA as to collection fees as discussed above, this evidence establishes a *per se* CPA violation. See Panag, 166 Wn.2d at 53. A *per se* violation establishes the first three elements of the Hangman test for a violation

---

[23] We note RCW 19.16.250(21) caps collection fees at 35 percent.

20

No. 85042-3-I/21

of the CPA. 105 Wn.2d at 784-89. Thus, to survive summary judgment dismissal of his CPA claims, Turner must also point to evidence sufficient to establish injury and causation, the fourth and fifth elements of the Hangman test. Id. at 785.

A "violation of the CPA requires some causal relationship between the unfair or deceptive trade practice and the alleged injury to support a private right of action." Panag, 166 Wn.2d at 61. "The issue is whether the plaintiff was wrongfully induced to pay money on a debt not owed 'or to incur expenses that would not otherwise have been incurred.' " Id. at 62 (quoting Wiginton v. Pac. Credit Corp., 2 Haw. App. 435, 444-45, 634 P.2d 111 (1981)). "Consulting an attorney to dispel uncertainty regarding the nature of an alleged debt is distinct from consulting an attorney to institute a CPA claim," so "[i]nvestigation expenses and other costs resulting from a deceptive business practice sufficiently establish injury." Panag, 166 Wn.2d at 62.

Here, the evidence showed that, when Fairway served its complaint on Turner, he was "frantic" to protect his good credit, so he called one attorney and then engaged another to manage Fairway's claim. Turner thus incurred costs to investigate the lawsuit filed by Fairway. This evidence is sufficient to establish a genuine issue of material fact as to causation and damages, the fourth and fifth elements of Turner's CPA claim. Therefore, as there are also genuine issues of fact regarding the first three elements through evidence of *per se* CPA violations,

21

No. 85042-3-I/22

the trial court erred by dismissing Turner's counterclaims under the CAA, the FDCPA and the CPA.[24]

II.      Motion to Enforce Settlement Agreement

Fairway cross-appeals and assigns error to the trial court's order denying its motion to enforce a settlement agreement between the parties. Turner argues that Fairway never agreed to his terms and he never agreed to its terms, so there never was a settlement agreement for the court to enforce. We agree with Turner.

In Washington, a trial court's authority to compel enforcement of a settlement agreement is governed by CR 2A. Morris v. Maks, 69 Wn. App. 865, 868, 850 P.2d 1357 (1993). CR 2A states:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

At least two criteria govern whether an agreement is disputed within the meaning of the rule. In re Marriage of Ferree, 71 Wn. App. 35, 40, 856 P.2d 706 (1993). "First, there must be a dispute over the existence or material terms of the agreement, as opposed to a dispute over its immaterial terms." Id. A material term is one that goes to the "substance, gist, or legal effect" of the agreement. Id. "Second, the dispute must be a genuine one," meaning that the purpose of CR

---

[24] Based on this conclusion, we do not separately address Turner's claims of non-*per se* violations of the CPA.

22

No. 85042-3-I/23

2A is served by barring the enforcement of an alleged agreement that is genuinely disputed, "for such a dispute adds to the issues that must be tried." Id. at 40-41.

CR 2A "supplements but does not supplant the common law of contracts." Ferree, 71 Wn. App. at 39. Washington follows the objective manifestation theory of contracts, meaning the intent of the parties is determined by their objective manifestations rather than any unexpressed subjective intent. Condon v. Condon, 177 Wn.2d 150, 162, 298 P.3d 86 (2013).

Summary judgment procedures apply to a motion to enforce a settlement agreement under CR 2A: the moving party has the burden to prove, in the light most favorable to the nonmoving party, that no genuine dispute exists regarding an agreement's existence or material terms. Id. at 161-62. We review a decision regarding settlement enforcement de novo. Condon, 177 Wn.2d at 162; see also id. at 161 n.4 (explaining that de novo review is appropriate despite abuse of discretion having been the standard in the past).

In April 2021, Turner offered in writing to settle. The offer stated that he was "not interested in negotiating this offer. It is a take it or leave it offer." His offer proposed "a mutual release of all claims and a mutual dismissal with prejudice of all claims." It required Fairway and Arbor Health not to treat settlement as a cancellation of debt for tax purposes, and it required them to recall any reports issued to credit reporting agencies.

The parties agreed to a May 12 deadline for Fairway's response. On May 11, Fairway emailed Turner that it and Arbor Health had "authority to accept

23

No. 85042-3-I/24

a mutual walk away releasing all parties by both sides." Fairway drafted "a proposed settlement agreement" and "circulat[ed] it on [Fairway's] side to see if there are any proposed changes." Fairway's initial draft of a settlement agreement did not include either the tax or credit reporting terms Turner required, although its second draft did. Fairway also added terms not in Turner's proposal that imposed affirmative duties on him, including a confidentiality term, a nondisparagement term, and a requirement that he indemnify Fairway against any claim Medicare might assert. The proposal also addressed costs and attorney's fees. Turner regarded Fairway's agreement as a counteroffer.

Here, the record shows that neither Turner's offer to Fairway nor Fairway's draft of a "confidential settlement agreement" memorializing settlement was subscribed to by the other party. Rather, Fairway's purported acceptance was a counteroffer that added material terms: confidentiality, nondisparagement, and indemnification. Further, Turner never signed Fairway's settlement agreement, and he expressly rejected it in several emails. We therefore conclude that CR 2A is not satisfied because Fairway has not met its threshold burden to establish that a settlement agreement exists about which there are no disputed material terms.[25] We affirm the denial of Fairway's motion to enforce settlement.

---

[25] Turner also argues that Fairway's appeal should be dismissed because it failed to perfect the record by including a verbatim report of proceedings of the parties' oral argument before the trial court on Fairway's motion to enforce. While the party seeking review has the burden to perfect the record, Rhinevault v. Rhinevault, 91 Wn. App. 688, 692, 959 P.2d 687 (1998), our review here is de novo, and the record contains all the documents that were before the trial court. Moreover, the rules on appeal allowed Turner to add the transcript of oral argument to the record if he wished. RAP 9.2. Consequently, we conclude that the record on appeal is sufficient for de novo review of the errors assigned. See Favors v. Matzke, 53 Wn. App. 789, 794, 770 P.2d 686 (1989).

No. 85042-3-I/25

III.     Fees and Costs

In Turner's opening brief, he requests this court to "reserve for the trial court a decision on an award of attorney fees and costs" incurred on appeal. Turner cites the CPA's treble damages provision, RCW 19.86.090, which also allows "the costs of the suit, including a reasonable attorney's fee," as well as 15 U.S.C. § 1692k(a)(3), which likewise allows for "the costs of the action, together with a reasonable attorney's fee."

Because Turner is the party that substantially prevailed on appeal, he is entitled to recover costs under RAP 14.2. If he prevails on remand, he may request, and the trial court may award, costs and fees based on RCW 19.86.090 and 15 U.S.C. § 1692k(a)(3).

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

_Chung, J._

WE CONCUR:

_Feldman, J._          _Hazelrigg, ACJ_

25