IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEANNENE MITCHELL,<br><br>               Appellant,<br><br>    v.<br><br>YWCA KING SNOHOMISH COUNTY OFFICERS,<br><br>               Respondent.<br><br>MARIA CHAVEZ-WILCOX, KRIS LAMBRIGHT, and 1-10 DOE DEFENDANTS,<br><br>               Defendants. | No. 87860-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Jeannene Mitchell entered into a settlement agreement with the YWCA to resolve her small claims court action concerning her housing conditions in a YWCA rental property. She later filed a lawsuit in superior court alleging similar claims as well as claims of financial mismanagement. The trial court granted the YWCA's motion to dismiss. We review the court's decision as an order on summary judgment and affirm. Many of Mitchell's claims are precluded by the settlement agreement and she fails to meet her burden on summary judgment on the remaining claims.

FACTS

On October 3, 2023, Jeannene Mitchell entered a lease agreement for a unit in the Lexington-Concord building owned by the YWCA. After allegedly suffering exposure

to mold in her apartment, Mitchell moved to a second unit within the Lexington-Concord building. She eventually moved to a different YWCA-owned property, Opportunity Place, on March 20, 2024.

In March 2024, Mitchell filed a lawsuit in King County District Court seeking $2,423 in personal damages for the YWCA's failure to perform its duties as a landlord. Mitchell claimed she was exposed to mold, building maintenance failed to repair a leak in the bathroom for four months, and maintenance did not address a mouse infestation. Mitchell and the YWCA settled the claim by settlement agreement on July 31, 2024. The YWCA agreed to pay Mitchell the requested $2,423 and Mitchell agreed to file a stipulation of dismissal with prejudice with the district court. The settlement agreement included a release of additional claims related to events occurring before the date of the agreement:

> Mitchell, of her own free will, voluntarily, for herself: her spouse, her heirs, legatees, representatives, successors, transferees and assigns, hereby forever releases, discharges and acquits the YWCA, and the YWCA's present and former divisions, officers, directors, employees, agents, insurers and attorneys ("Released Parties") of and from any and all claims, demands, sums of money, actions, rights, causes of action, obligations and liabilities of any kind whatsoever, at law or in equity, known or unknown, that Mitchell has or may have in the future, which are or may be based upon any facts, acts, conduct, representations, omissions, contracts, claims, events, causes, matters or other things occurring at any time on or before the date of this Agreement. Said release includes without limitation the matters alleged in *Jeannene Ann Mitchell v. YWCA of Seattle-King County*, filed with King County District Court (Case No. 24CIV05325KCX) and any and all matters arising out of Mitchells tenancy and relationship with the YWCA; any grievances, claims for discrimination, harassment, retaliation, physical or emotional injury; any alleged violation of Washington's Law Against Discrimination (RCW 49.60); Title VII of the Civil Rights Act of 1964; the Americans With Disabilities Act, any comparable state laws including the or any other federal, state or local law, regulation or ordinance, or public policy, contract or tort law, having any bearing whatsoever on the terms and conditions of Mitchell's relationship with the YWCA.

2

Mitchell received a check for the full amount of the settlement agreement from the YWCA on August 5, 2024. The same day, Mitchell sent a letter to the district court "to propose a settlement" agreement, detailed the salient terms, and included a copy of the agreement. The court responded:

> Plaintiff has filed what the Court construes as a proposed settlement agreement. The Court does not deem this to be a motion to dismiss the case at this time. It is unclear whether Plaintiff has delivered to Defendant a copy of the proposed settlement agreement. The Court will not forward a copy of Plaintiff's letter to Defendant, as that is the Plaintiff's responsibility. In the future, any settlement communications between the Parties do not need to be filed with the Court.

Mitchell attempted to file a settlement letter with the district court on August 14, 2024, but the court rejected the filing stating: "[d]ocuments are excluded from electronic filing pursuant to LGR 30, court is unable to process. Please file by mail or in person. This document is marked to be confidential."

Instead of filing a stipulation of dismissal with prejudice, Mitchell then moved to dismiss the district court case without prejudice, which the court granted on September 5, 2024. The order entered states, "Plaintiff appeared and moved for dismissal without prejudice so that she could file in a higher court. Proof of service was not filed and Defendant did not appear."

On November 1, 2024, Mitchell, acting pro se, filed a complaint against the YWCA and its Chief Executive Officer Maria Chavez-Wilcox and former Chief Financial Officer Kris Lambright in King County Superior Court. Counsel for the YWCA timely appeared in the action. Mitchell later filed an amended complaint that asserted 21 claims: failure of duty to tenants (count 1); "warranty of habitability failure" (count 2); embezzlement (count 3); "laundering money through real estate" (count 4);

3

"misrepresenting revenues and expenses" (count 5); retaliation (count 6); "life endangerment" (count 7); negligence (count 8); violation of freedom of speech (count 9a)[1]; "no legal protocol for tenants" (count 9b); "planned obsolescence" (count 10); breach of fiduciary duty (count 11); "no security for tenants" (count 12); fraud in discrepancy between actual building conditions and reported improvement costs for 2023 (count 13); "Math is wrong" meaning fraud in increasing expenses from 2022 to 2023 without significant property improvement or operational changes (count 14); "credit utilization" by opening 48 lease accounts not listed in the YWCA's IRS 990 form[2] (count 15); identity theft by opening unauthorized lease accounts[3] (count 16); securities fraud because the 2022-23 cash sales do not equal amount invested (count 17); "Reduced Income and Cash Reduction from Financing Activities" (count 18); "'Other' Categories 2022 (only)" which appears to dispute financial expenditures (count 19); money laundering embezzled funds based on selling and reselling the same property (count 20); "Whistleblower Compensation Claim" (count 21) in which Mitchell requests that the court award compensation for her discoveries.

The facts section of Mitchell's complaint stated that she entered into a rental agreement with the YWCA from October 3, 2023 to January 1, 2024, and had to move to a different YWCA property after having been exposed to mold. As to Mitchell's other claims, she summarily asserts: "Defendants engaged in systemic fraud, embezzlement, money laundering, and identity theft, using unauthorized guardian accounts and other

---

[1] The complaint includes two claims named "count 9." We refer to them as "count 9a" and "count 9b" so as to maintain the numbers Mitchell assigns to her claims.

[2] Mitchell does not allege that the YWCA unlawfully obtained credit based on her lease account.

[3] Mitchell does not allege that the YWCA stole her identity.

4

fraudulent practices to conceal their actions." Mitchell also submitted a notarized document she filed as her supporting affidavit. This document summarizes Mitchell's complaint which can best be categorized into three issues: (1) habitability of her rented YWCA property, (2) YWCA financial and operational mismanagement; and (3) YWCA retaliatory actions and free speech violations. As to her rental unit, Mitchell avers she suffered health impacts and medical bills because of "mold infestations, rodent activity, persistent leaks, and non-functioning electrical outlets," and that the YWCA did not timely address the known hazards. Regarding complaints of "Financial and Operational Mismanagement," Mitchell asserts:

7. Based on inspection reports and discrepancies in YWCA's financial records, the funds allocated for property maintenance were misappropriated. Records indicate IRS Form 990 reporting funds for "leasehold improvements," yet the Lexington-Concord building deteriated [sic] without any leasehold improvements performed, rendering the buildings obsolete.

8. YWCA's mismanagement is further evidenced by unexplained financial figures in the "Other" categories of their filings, totaling over $97 million in 2022 exclusively, with no clear allocation to necessary property repairs, and incorrect mathematical calculations.

As to Mitchell's "Retaliatory Actions and Freedom of Speech Violations," Mitchell also alleges

9. After I reported the unsafe conditions, YWCA officers took retaliatory actions against me, including blocking communication and imposing settlement clauses that restricted my rights to report future issues.

10. These actions violate my rights under RCW 59.18.240 and 59.18.250 of the Washington State Landlord-Tenant Act, which protect tenants from retaliation and ensure the freedom to report unsafe living conditions.

The YWCA filed a motion for relief from deadline, requesting extension of the deadline for responsive pleading, contemporaneously with a CR 12(b)(6) motion to

dismiss. Mitchell filed an ex parte motion for entry of default against the YWCA. The trial court denied Mitchell's motion, noting that the YWCA had appeared through counsel and noted a motion to dismiss for hearing. The court granted the YWCA's motion for relief from deadline.

The trial court heard oral argument on the YWCA's motion to dismiss and subsequently entered an order granting the motion and dismissing Mitchell's claims with prejudice.

Mitchell appeals.

DISCUSSION

Mitchell argues that the trial court improperly dismissed her case because the YWCA was in default, the settlement agreement is void and unenforceable under Cr 2A, she has standing to bring the various claims, and the court did not allow her adequate time to state her claims.

Order on Review

The YWCA moved to dismiss the case for "failure to state a claim upon which relief can be granted" under CR 12(b)(6), and the trial court granted dismissal on that ground. A CR 12(b)(6) motion challenges the legal sufficiency of the complaint and should be granted only if the plaintiff cannot prove any set of facts that would justify recovery. Singh v. Fed. Nat'l Mortg. Ass'n, 4 Wn App. 2d 1, 4, 428 P.3d 373 (2018). "When a party submits documents that were not contained in the original complaint for consideration by the court in assessing a CR 12(b)(6) motion, those submissions generally convert the motion to dismiss into a motion for summary judgment under CR 56." Singh, 4 Wn. App. 2d at 4-5; CR 12(b).

In support of its motion to dismiss, the YWCA submitted several documents outside the pleadings including Mitchell's lease agreement, the letter notifying the district court of the proposed settlement agreement, the court's response, and the district court order dismissing the case without prejudice. The court considered these documents when ruling on the motion to dismiss. Because this evidence was not contained in Mitchell's amended complaint, the submissions converted the motion to dismiss to a motion for summary judgment. We therefore review the trial court's order as a decision on motion for summary judgment.

We review a trial court's grant of summary judgment de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is appropriate "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); see also CR 56(c). "The party moving for summary judgment bears the initial burden of showing that there is no disputed issue of material fact. The burden then shifts to the nonmoving party to present evidence that an issue of material fact remains." Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022) (citation omitted). The nonmoving party avoids summary judgment when it sets forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact. Ranger Ins. Co., 164 Wn.2d at 552. "[W]e consider all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party." Scrivener, 181 Wn.2d at 444. Additionally, we may affirm the trial court's decision on any basis supported by the record. Huff v. Wyman, 184 Wn.2d 643, 648, 361 P.3d 727 (2015).

<u>Default</u>

Mitchell claims the trial court erred by denying her motion to enter an order of default against the YWCA. We disagree.

A party may move for default when "a party against whom a judgment for affirmative relief is sought has failed to appear, plead, or otherwise defend as provided by these rules and that fact is made to appear by motion and affidavit." CR 55(a)(1). Appearance by a party is not enough to prevent entry of an order of default. "Even if a party has appeared in an action, if the party then fails to answer a pleading . . . or to file a responsive pleading . . . the party may still enter default." <u>Duryea v. Wilson</u>, 135 Wn. App. 233, 238, 144 P.3d 318 (2006). However, a party that has filed such pleadings is not in default. <u>Duryea</u>, 135 Wn. App. at 239.

Here, counsel for YWCA acknowledged that she had miscalculated the deadline for responsive pleading after Mitchell filed her amended complaint. To remedy the error, the YWCA filed a motion for relief from deadline under CR 6(b)(2)[4] contemporaneously with its untimely motion to dismiss the case. Pursuant to CR 6(b)(2), "for cause shown" and "upon motion made after the expiration of the specified period," the court has the discretion to "permit the act to be done where the failure to act was the result of excusable neglect."

Counsel for the YWCA made a motion and a showing of excusable neglect for

---

[4] CR 6(b) states:
When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion, (1) with or without motion or notice, order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order; or (2) upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect.

failing to file timely pleadings. The trial court granted the motion which extended the deadline to December 23, 2025, the date YWCA filed the motion to dismiss. Mitchell has not assigned error to the court's order granting relief from deadline and makes no argument that the court abused its discretion in granting the requested relief.

The trial court exercised its discretion to extend the deadline for the YWCA to submit its pleadings such that the YWCA's motion to dismiss was timely. The YWCA was not in default, therefore the trial court properly denied Mitchell's motion for an order of default.

<u>Application of the Settlement Agreement</u>

Settlement agreements are governed by the principles of contract law. <u>Morris v. Maks</u>, 69 Wn. App. 865, 868, 850 P.2d 1357 (1993). Such agreements between private parties "are viewed with finality." <u>Paopao v. Dep't of Soc. & Health Servs.</u>, 145 Wn. App. 40, 48, 185 P.3d 640 (2008). "The courts will enforce a settlement agreement so long as it was fairly and knowingly made." <u>Oregon Mut. Ins. Co. v. Barton</u>, 109 Wn. App. 405, 414, 36 P.3d 1065 (2001). Additionally, "a strong presumption attaches that the parties have considered and settled every existing difference." <u>Oregon Mut. Ins. Co.</u>, 109 Wn. App. at 414.

*A. Validity of the Settlement Agreement*

Mitchell claims that the settlement agreement cannot preclude her claims because it "was not executed as a matter of law, contains seven illegal phrases, and was dismissed without prejudice by [the district court], rendering it void."

Mitchell first asserts that the settlement agreement was not executed as a matter of law. According to Mitchell, the district court dismissed the case without prejudice,

9

thereby preserving her ability to bring the claims anew. Additionally, she argues, the YWCA did not appear at the proceedings in district court or make a motion to enforce the settlement agreement under CR 2A.

Contrary to Mitchell's assertion, the district court did not "reject" the settlement agreement. The proposed settlement agreement document submitted by Mitchell was "returned to the filer or are rejected for filing" for procedural reasons rather than any issues with its contents. Moreover, Mitchell obtained the dismissal without providing evidence that she had served the YWCA with notice of the motion and proceedings, and the YWCA did not appear, presumably due to lack of notice. The YWCA did not have the opportunity to respond to the motion to dismiss without prejudice or move to enforce the settlement agreement.

Mitchell's characterizations of the district court's actions are erroneous and misleading. She provides no legal support for her contention that an order granting a motion to dismiss without prejudice prevents the enforcement of a valid contract.[5] The actions of the district court did not invalidate the settlement agreement.

Next, Mitchell contends that she was forced to sign the agreement under economic duress and the agreement contains illegal clauses "including an overbroad waiver of future claims and clauses barring Appellant from reporting future maintenance issues." Her claims of illegality arise from a misunderstanding of the language of the settlement agreement.

The settlement agreement releases defendants from claims "known or unknown,

---

[5] In support Mitchell quotes, "A dismissal without prejudice leaves the parties as if no action had been brought at all," and attributes the quotation to Allan v. Univ. of Wash., 140 Wn.2d 323, 997 P.2d 360 (2000). Allan does not include this statement, nor does the case discuss dismissal of a claim without prejudice.

that Mitchell has or may have in the future, which are or may be based upon any facts, acts, conduct, representations, omissions, contracts, claims, events, causes, matters or other things occurring at any time on or before the date of this Agreement." Mitchell may not bring any future claims based on actions that occurred before the date of the settlement agreement. However, the agreement does not prevent Mitchell from bringing claims based on actions or issues occurring after July 31, 2024. As explained by the YWCA during oral argument, "the settlement agreement does not preclude Ms. Mitchell from reporting future repair concerns. It simply settled all claims related to existing repair concerns, whether known or unknown at the time of her signature." The court further clarified, "That's the future part. . . . you can't come back later on and try to litigate or claim more damages arising out of the original subject matter of the settlement, as opposed to . . . something totally different." The language does not illegally curtail her ability to report future issues or bring future claims. Therefore, Mitchell's argument that the settlement agreement cannot bar her claims because it is void or voidable is without merit.

As to her claim of duress, Mitchell asserts she "was forced to sign under economic duress after medical bills went into collections and housing was unstable." However, "[t]he assertion of duress must be proven by evidence that the duress resulted from the other's wrongful or oppressive conduct. The mere fact that a contract is entered into under stress or pecuniary necessity is insufficient." Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket, Inc., 96 Wn.2d 939, 944, 640 P.2d 1051 (1982). Because Mitchell does not provide any evidence that the YWCA engaged in wrongful or oppressive conduct to coerce her agreement to the settlement, she cannot

11

negate the contract with her claim of duress. Mitchell's arguments that the settlement agreement is unenforceable due to duress and illegal terms have no merit.

Mitchell also contends that the settlement agreement is not enforceable under CR 2A because the YWCA did not move to enforce the agreement and the agreement included illegal terms. CR 2A provides that the court will not enforce a disputed agreement between the parties "unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same." However, "CR 2A applies only when (1) the agreement was made by the parties or attorneys 'in respect to the proceedings in a cause,' and (2) the purport of the agreement is disputed. Lavigne v. Green, 106 Wn. App. 12, 17, 23 P.3d 515 (2001) (quoting In re Marriage of Ferree, 71 Wn. App. 35, 39, 856 P.2d 706 (1993)). "[T]he 'purport' of an agreement is disputed only when its existence or material terms are disputed," and the dispute must be genuine. Ferree, 71 Wn. App. at 40. The burden is on the party asserting the settlement agreement to prove there is no genuine dispute as to the existence and material terms of a settlement agreement. Id. at 41.

Counsel for defendants filed a declaration and attached multiple exhibits, including a copy of the settlement agreement signed by Mitchell on July 29, 2024 and a representative of the YWCA on July 31, 2024. Counsel also filed a copy of the settlement check written on August 2, 2024 and a declaration of the Housing Services Director stating that she had "handed" the settlement check to Mitchell on Monday August 5, 2024. Mitchell disputes the existence of the settlement agreement based on (1) the district court's "rejection" of the document and the entry of the order of dismissal

without prejudice and (2) the allegedly illegal terms. As shown above, these claims are without merit and, therefore, do not support a genuine dispute as to the existence and material terms of the agreement. Without a genuine dispute, CR 2A does not bar enforcement of the settlement agreement and Mitchell is bound by the terms of that contract.

*B. Claims that Are Barred by the Settlement Agreement*

Based on the settlement agreement, Mitchell cannot raise new claims arising from actions or events that occurred prior to signing the document on July 31, 2024. Therefore, the settlement agreement bars any claims in the amended complaint related to the maintenance issues at the Lexington-Concord building during that time. Mitchell does not assert that the claims arise from a different time frame. Therefore, she fails to raise a genuine issue of fact to dispute enforcement of the contract and the trial court properly granted summary judgment on those claims barred by the settlement agreement. See Allen v. State, 19 Wn. App. 2d 895, 912, 498 P.3d 552 (2021) (summary judgment was appropriate where plaintiff established no genuine dispute of material fact as to the validity of the settlement agreement). The trial court did not err in dismissing Mitchell's claims of: failure of duty to tenants (count 1); "warranty of habitability failure" (count 2); "life endangerment" (count 7); negligence (count 8); and "no legal protocol for tenants" (count 9b); and "no security for tenants" (count 12).

<u>Claims Not Barred by the Settlement Agreement</u>

Mitchell's complaint includes many claims pertaining to the YWCA's "Financial and Operational Mismanagement" that are not necessarily barred by the settlement agreement. In its motion to dismiss, the YWCA provided legal argument and evidence

that Mitchell's claims have no basis in law or fact. We agree.

A. *Allegations Rather than Causes of Action*

In the motion to dismiss, the YWCA provided legal arguments to establish that several of Mitchell's counts do not raise actual causes of action. These claims include: "planned obsolescence" (count 10) pled as "Defendants have ample money for long and short-term maintenance. Tax Returns IRS 990 show continuing grant increases for maintenance. Yet there is no maintenance"; "Math is wrong" (count 14) alleging fraud based on an increase in expenditures without an increase in services; "Reduced Income and Cash Reduction from Financing Activities" (count 18) which merely claims "2021-2022 990s show losses from fundraising activities. The purpose of fundraising is to raise funds—not lose money"; "'Other' Categories 2022 (only)" (count 19) which appears to dispute financial expenditures; and a "Whistleblower Compensation Claim" (count 21) in which she requests that the court award compensation for her discoveries.

Mitchell's response to the motion to dismiss fails to rebut the YWCA's legal arguments. She has not met her burden to counter the YWCA's motion with evidence and legal argument in support of these claims. The counts were properly dismissed on summary judgment.

B. *Financial Misconduct*

Many of the counts pleaded in the amended complaint are based on claims of financial misconduct: embezzlement (count 3); "laundering money through real estate" (count 4); "misrepresenting revenues and expenses" (count 5); breach of fiduciary duty (count 11); fraud (count 13); "credit utilization" (count 15); identity theft (count 16); securities fraud (count 17); and money laundering embezzled funds (count 20). Again,

in the motion to dismiss, the YWCA provided extensive legal argument as to why these claims are not properly asserted and should fail. Mitchell responds, "[t]he complaint addresses embezzlement, unauthorized credit accounts, fake securities sales, Unauthorized Accounts and Fraud. Defendants lack of response delays and defrauds the court." Additionally, Mitchell alleges that she has standing to bring the lawsuit under "under federal state, municipal laws, including the Internal Revenue Code, Sarbanes-Oxley Act, Pension Protection Act, Washington Nonprofit Corporation Act, Charitable Solicitation Act, and Landlord Tenant Law."

Merely alleging financial misconduct without admissible evidence of facts cannot defeat summary judgment. See Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430, 38 P.3d 322 (2002) ("conclusions of fact are insufficient. . . conclusory statements of fact will not suffice"). The YWCA has demonstrated that there are no genuine issues of material fact and it is entitled to judgment as a matter of law on these financial claims. Therefore, summary judgment was properly granted.

C.  Retaliation and Freedom of Speech

In count 9a, Mitchell alleges that the YWCA violated her freedom of speech by prohibiting her from "reporting any past, present, or future repair issues," and "prevents the tenant from reporting any unknown claims in the future." In the motion to dismiss, the YWCA points out that it is not a state actor, as required for a First Amendment claim. Indeed, the First and Fourteenth Amendments safeguard the freedom of speech only with respect to state actions. See Southcenter Joint Venture v. Nat'l Democratic Policy Comm., 113 Wn.2d 413, 420, 780 P.2d 1282 (1989). Mitchell has not provided any evidence or legal argument to establish that the YWCA is a public entity and subject

to claims for freedom of speech violations.

Mitchell also claims that the YWCA retaliated against her after she complained about the housing conditions, citing RCW 59.18 in count 6 of the amended complaint. Her affidavit further explains the alleged retaliatory actions: "After I reported the unsafe conditions, YWCA officers took retaliatory actions against me, including blocking communication and imposing settlement clauses that restricted my rights to report future issues." She asserts that the actions violate her rights under RCW 59.18.240 and RCW 59.18.250 of the Residential Landlord-Tenant Act (RLTA).

Under the RLTA,

So long as the tenant is in compliance with this chapter, the landlord shall not take or threaten to take reprisals or retaliatory action against the tenant because of any good faith and lawful:

(1) Complaints or reports by the tenant to a governmental authority concerning the failure of the landlord to substantially comply with any code, statute, ordinance, or regulation governing the maintenance or operation of the premises, if such condition may endanger or impair the health or safety of the tenant; or

(2) Assertions or enforcement by the tenant of his or her rights and remedies under this chapter.

RCW 59.18.240. For the purposes of this provision, "reprisal or retaliatory action" includes, but is not limited to, eviction, increasing rent, reduction in services, and increasing the obligations of the tenant, "when such actions are intended primarily to retaliate against a tenant because of the tenant's good faith and lawful act." RCW 59.18.240(2). If a landlord initiates any of these actions within 90 days of "a good faith and lawful act by the tenant as enumerated in RCW 59.18.240," there is a rebuttable presumption that the action was a reprisal or retaliatory action. RCW 59.18.250.

Mitchell does not contend that the YWCA engaged in any of the reprisal or

16

retaliatory services named in RCW 59.18.240. Rather, she claims retaliation through the terms of the settlement agreement that restricted her ability to report future issues. However, as discussed above, the settlement agreement prohibits Mitchell from future claims based on actions that occurred before the date of the settlement agreement. The provisions of the settlement agreement do not restrict Mitchell from reporting future issues. As a result, Mitchell does not establish a claim for retaliation under the RLTA.

Because Mitchell did not respond to the YWCA's motion to dismiss with admissible evidence and legal argument to support her claims, dismissal with prejudice was proper.

Time to Argue Claim

Finally, Mitchell asserts "Court's imposition of severe and arbitrary time limits, especially on a complex motion, denied Appellant a meaningful opportunity to present her case, thus violating the fundamental right to be heard and denying due process." She alleges that she was "cut off, silenced, evidence refused, and rebuttal barred in a 22-minute hearing."

King County LCR 56(c)(1) requires oral arguments for all summary judgment[6] motions unless waived by the party or struck by the court. "The assigned judge shall determine the length of oral argument." KCLCR 56(c)(1). Additionally, "[a] trial court has discretion to reasonably control the presentation of a party's argument to secure fair, effective, and efficient proceedings." Baldwin v. Silver, 165 Wn. App. 463, 470, 269 P.3d 284 (2011).

---

[6] The King County local rules do not have a similar requirement for CR 12(b)(6) motions. See KCLCR 12. The YWCA originally brought this motion as a CR 12(b)(6) motion to dismiss.

Mitchell claims "bias and denial of right to be heard" by the trial court. In support of this claim, she specifically cites to the trial court's statement, "I don't even know what you're talking about," in the context of her discussion about her claim of identity theft. The court further stated, "I'm not understanding the connection to identity theft." The court then allowed Mitchell to provide a lengthy explanation of the claims. Additionally, before ending the proceedings and taking the matter under advisement, the court inquired, "[i]s there something, one more thing you need me to know related only to what counsel has said and nothing more?" This allowed Mitchell further opportunity to respond to the YWCA's arguments.

Mitchell was not "cut off" and her rebuttal was not barred by the court. While she may have preferred more time, the court was allowed to exercise its discretion as to the length of oral argument. She was not denied her right to be heard.

## CONCLUSION

Mitchell is bound by the settlement agreement and the court properly dismissed those claims precluded by its terms. For the remaining claims, Mitchell failed to rebut the YWCA's evidence and argument on summary judgment. The trial court properly granted summary judgment and dismissed her claims with prejudice.

Affirmed.

_Coburn, J._

WE CONCUR:

_Chung, J._         _Hazelrigg_